Charlcie PINK, Individually and As
Representative of the Estate of
Veryl L. Pink, Appellant,

v.

GOODYEAR TIRE & RUBBER COM-
PANY and Texaco Refining & Mar-
keting, Inc., Appellees.

No. 09–09–00241–CV.

Court of Appeals of Texas,
Beaumont.

Submitted April 8, 2010.

Decided Sept. 9, 2010.

Lance Lubel, J. Robert Black, Heard, Robins, Cloud & Lubel, Daryl L. Moore, Daryl L. Moore, P.C., L. Lyn Ramsey, L. Lyn Ramsey, P.C., Houston, for appellant.

David A. Oliver, Tiffany Bingham Briscoe, Sharon K. Wendell, Vorys, Sater, Seymour and Pease LLP, Houston, for appellees.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Alleging that his exposure to benzene while working at Goodyear Tire & Rubber Company caused renal cell carcinoma, Veryl L. Pink and his wife Charlcie Pink sued Goodyear and a number of product suppliers, including Texaco Refining & Marketing, Inc. After Veryl's death, Charlcie Pink maintained the lawsuit.

In this appeal, Pink contends the trial court erred in granting a no-evidence motion for summary judgment filed by Good-

year, and in signing a take-nothing judgment in favor of Texaco. *See* Tex.R. Civ. P. 166a(i). No issue is raised on appeal concerning the judgments granted in favor of other defendants.

We affirm the judgment as to Texaco, because Pink voluntarily discontinued the lawsuit against Texaco. Pink produced some evidence supporting the elements of a claim against Goodyear. We reverse the trial court's summary judgment as to Goodyear and remand the case to the trial court for further proceedings consistent with this opinion.

### Voluntary Discontinuance as to Texaco

Pink contends the trial court erred in rendering a final judgment in favor of Texaco, because Texaco did not join in any of the motions for summary judgment. A trial court cannot dispose of a claim by summary judgment that has not been challenged in a motion for summary judgment. *See Teer v. Duddlesten,* 664 S.W.2d 702, 703 (Tex.1984) (op. on reh'g).

Texaco did not file an answer in the trial court to Pink's petition. Pink did not file a non-suit of the claims against Texaco. After the trial court granted several summary judgments in favor of some defendants and signed an order of non-suit as to other defendants, Pink requested that the trial court sign a final appealable judgment disposing of all the claims; Pink did not request a severance of the claims against

Texaco or a default judgment against Texaco. Pink did not complain in the trial court of the judgment disposing of the claims against Texaco. Having voluntarily discontinued the lawsuit against Texaco in the trial court, Pink may not complain of that disposition for the first time on appeal. *See* Tex.R.App. P. 33.1; *see also M.O. Dental Lab v. Rape,* 139 S.W.3d 671, 674 (Tex.2004) (discontinuance of lawsuit as to defendants where no service was requested or expected); *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230, 232 (Tex.1962) (discontinuance as to unserved defendant). We overrule issue one.

### No-Evidence Summary Judgment

Pink contends the trial court erred in granting Goodyear's no-evidence motion for summary judgment. Rule 166a(i) authorizes a summary judgment motion asserting there is no evidence to support one or more elements of a plaintiff's claim. *See* Tex.R. Civ. P. 166a(i) & cmt. to 1997 change.[1]

The Supreme Court has explained that "[a] no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750 (Tex.2003). The non-movant must produce some evidence supporting the challenged element of a claim to defeat a Rule 166a(i) no-evidence mo-

---

1. The motion is only authorized "[a]fter adequate time for discovery" has been provided. Tex.R. Civ. P. 166a(i). When the discovery period is set "by pretrial order," "ordinarily a motion under paragraph (i) would be permitted after the period but not before." Tex.R. Civ. P. 166a(i), cmt. to 1997 change; *see also* Sarah B. Duncan, *No–Evidence Motions for Summary Judgment: Harmonizing Rule 166a(i) and Its Comment,* 41 S. Tex. L. Rev. 873, 900 (2000). Pink notes that Goodyear filed its amended no-evidence motion for

summary judgment before the expiration of the discovery period set out in the trial court's docket control order. *See* Tex.R. Civ. P. 166a(i) & cmt. to 1997 change. Pink's response in the trial court argued that the motion was premature, and that the hearing should be continued until after the completion of discovery. Because on appeal Pink does not brief the question of the timing of the summary judgment, however, we do not address that question.

tion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). The evidence is viewed in the light most favorable to the nonmovant. *King Ranch, Inc.*, 118 S.W.3d at 751; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex.2002). If the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions regarding the essential element challenged by the no-evidence motion, the nonmovant has met its burden and the trial court must deny the motion. *See Ridgway*, 135 S.W.3d at 601 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)).

In evaluating summary judgment evidence, an appellate court does not judge the credibility of the witnesses or weigh the evidence. *See Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 523 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). This Court must indulge every reasonable inference in favor of the non-movant and resolve doubts in the nonmovant's favor. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985). An appellate court must assume, for purpose of a summary judgment review, that the evidence favorable to the nonmovant is true. *Nixon*, 690 S.W.2d at 549.

■ "A summary judgment is not entitled to the same deference given to a judgment following a trial on the merits." *Bell v. Moores*, 832 S.W.2d 749, 751 (Tex. App.-Houston [14th Dist.] 1992, writ denied). An appellate court reviews a summary judgment *de novo* to determine whether the movant is entitled to judgment as a matter of law prior to trial. *See id.* at 751–52.

#### THE SUMMARY JUDGMENT EVIDENCE CONSIDERED

The parties dispute what evidence the trial court considered in ruling on Good-year's motion for summary judgment. Pink filed a response to the motion, and then supplemented the response less than seven days before the summary judgment hearing.[2] Goodyear objected to the late filing, and on appeal argues that the late-filed evidence cannot be considered as part of the summary judgment record. *See* TEX.R. CIV. P. 166a(c) ("Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.").

■ Unless the order indicates that the trial court granted leave, an appellate court generally will presume the trial court did not consider untimely summary judgment evidence. *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex.1996) (citing *INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex.1985)). The interlocutory order granting summary judgment for Good-year does not indicate whether the trial court considered the late response, but the final judgment states that the trial court considered "all of the evidence on file" when it granted the summary judgment. In addition, the transmittal letter to the trial court drafted by Pink's counsel of record states that the proposed final judgment "makes clear what evidence was considered[ ]" by stating that "in granting Defendants' motions for summary judgment and in denying plaintiffs' motions for new trial, the Court considered all of the evidence on file at the time of the granting of the summary judgments." It is apparent from the judgment that the trial court considered the supplemental response in rendering judgment. *See id.; Stephens v.*

---

**2.** The affidavit of the treating oncologist states he was out of town for two weeks and "un- available to provide an affidavit to Plaintiff's counsel."

*Dolcefino,* 126 S.W.3d 120, 133–34 (Tex. App.-Houston [1st Dist.] 2003), *pet. denied,* 181 S.W.3d 741 (Tex.2005) (In light of statement on record that the trial court would include a late-filed videotape in the summary judgment record, appellate court considered evidence filed after trial court granted summary judgment.). Accordingly, for purposes of appellate review, the summary judgment record includes the affidavit of Dr. Mahesh Kanojia (Pink's treating oncologist) and the deposition testimony of Pink's co-worker, Hamilton Cooper.

### Duty and Breach

■ Goodyear's motion for summary judgment asserted there was no evidence of a duty or breach of a duty. The summary judgment motion acknowledged that Veryl Pink was a Goodyear employee from approximately 1963 to 1997. He died in 2005.

■ The existence of a legal duty is a question of law. *Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211, 217 (Tex.2008). Goodyear owed Pink a duty to use ordinary care in providing a safe workplace. *See Kroger Co. v. Elwood,* 197 S.W.3d 793, 794 (Tex. 2006); *see also* Tex. Lab.Code Ann. § 411.103 (Vernon 2006) (Employer shall provide and maintain a "reasonably safe and healthful" place of employment.). An employer "must, for example, warn an employee of the hazards of employment and provide needed safety equipment or assistance." *Kroger Co.,* 197 S.W.3d at 794.

■ A surviving spouse may bring a claim for exemplary damages under Texas law against an employer if the employer's gross negligence caused the employee's death. *See Zacharie v. U.S. Natural Res., Inc.,* 94 S.W.3d 748, 756 (Tex.App.-San Antonio 2002, no pet.); *see also* Tex. Lab. Code Ann. § 408.001 (Vernon 2006). Pink attempted to raise an issue of material fact regarding gross negligent breach of the duty owed by Goodyear through deposition testimony that indicated: (1) in the 1960s and early 1970s Goodyear employees, including Veryl Pink, washed their hands in benzene, a carcinogen; (2) Goodyear supervisors were aware of the practice and did not stop it; (3) Goodyear was aware of benzene's hazards; and (4) a Goodyear supervisor observing this practice did not provide a warning regarding the hazards of benzene or regarding the failure to use respirators around benzene.[3] In this review, we do not decide whether this testimony is credible. Rather, we must assume in this summary judgment review that the testimony is true, view the testimony in a light most favorable to the nonmovant, and indulge every reasonable inference in favor of the nonmovant. *See Nixon,* 690 S.W.2d at 549. Under the applicable review standard, we cannot conclude on this record that Pink produced legally insufficient evidence to support a gross negligence claim. *See King Ranch, Inc.,* 118 S.W.3d at 751 (standard of review); *see also Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 922–23 (Tex.1998) (legally sufficient evidence of gross negligence in failing to warn or protect workers from benzene exposure, including washing hands in benzene).

### Proximate Cause

■ The motion for summary judgment also asserted there was no evidence

3. "At room temperature and standard pressure, benzene is a clear liquid with a sweet smell, but it evaporates quickly and is highly flammable.... Benzene is a known carcinogen." *City of San Antonio v. Pollock,* 284 S.W.3d 809, 813 (Tex.2009) (citing information from a report prepared for the City of San Antonio). "[T]he OSHA standard for maximum exposure to benzene in the work place is 1 ppm[.]" *Id.* at 819 (citing 29 C.F.R. § 1910.1028(c)(1) (2008)).

of proximate cause. Goodyear maintains Pink produced no evidence that the benzene exposure could cause or did in fact cause Veryl Pink's cancer. Pink argues Dr. Mahesh Kanojia's affidavit, along with the co-worker's testimony of the use of benzene, is some evidence that the cancer was caused by the exposure to benzene at Goodyear.

In his affidavit, Dr. Kanojia states his opinion as follows:

BEFORE ME, the undersigned authority, on this day personally appeared Mahesh Kanojia, M.D., who, being by me duly sworn, deposed and stated as follows:

My name is Dr. Mahesh Kanojia. I am over the age of twenty-one (21) years, am of sound mind, and have never been convicted of a felony or a crime involving moral turpitude. I am fully competent to make this affidavit and have personal knowledge of the facts stated therein, and they are true and correct.

I am an oncologist/hematologist with over 28 years of experience. I graduated from medical school in India. I did my internal residency in Birmingham, Alabama. I did my hematology fellowship in Augusta, Georgia. I did a fellowship at M.D. Anderson Cancer Center and was staff at M.D. Anderson Cancer Center. I went into private practice in 1983 and maintained two offices, one in Beaumont, Texas and one in Houston, Texas. I still currently treat patients in Houston. A copy of my curriculum vitae is attached as Exhibit 1.

I was Veryl Pink's treating oncologist. Mr. Pink was diagnosed with renal cell carcinoma, which was confirmed by biopsy. The ultimate cause of Mr. Pink's death was the progression of the disease.

Based upon reasonable medical probability it is my opinion that the cause of Mr. Pink's renal cell carcinoma was exposure to chemicals, more than likely benzene. In rendering this opinion I have reviewed Mr. Pink's medical records, the deposition testimony of Mr. Pink and three of his co-workers, the deposition of Dr. Radelat, and scientific literature.

I was out of town the weeks of January 12, 2009 and January 19, 2009 and unavailable to provide an affidavit to Plaintiff's counsel.

FURTHER Affiant sayeth not.

Dr. Kanojia, the treating oncologist, stated his training and experience, attached his curriculum vitae to the affidavit, and implicitly claims the expertise and knowledge to express the opinion. While the etiology of a disease is often significant to a clinician's care of a patient, as well as to public health issues, and while a clinician may have training and experience in the study of cancer and its etiology, the clinician may nevertheless lack the expertise necessary to present a causation opinion related to a toxic chemical exposure. Goodyear has not challenged the qualifications of the treating oncologist to express an opinion on the cause of the cancer, however, and considering the evidence of his education, training, experience, and area of expertise, we consider as true for purposes of this appeal the assertion that Dr. Kanojia has the expertise to determine whether the benzene exposure at Goodyear caused the cancer. *See Nixon,* 690 S.W.2d at 549; *cf. United Blood Servs. v. Longoria,* 938 S.W.2d 29, 31 (Tex.1997) ("UBS's objections, which were, for the most part, based on facts conclusively established" demonstrated the lack of expertise.).

Goodyear argues that the opinion expressed in the affidavit is conclusory. An expert opinion is considered conclusory

if it is essentially a "conclusion without any explanation." *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.,* 249 S.W.3d 380, 389 & n. 32 (Tex.2008). A party may not avoid a no-evidence summary judgment by presenting speculation. *See Hodgkins v. Bryan,* 99 S.W.3d 669, 674–75 (Tex.App.-Houston [14th Dist.] 2003, no pet.). A speculative opinion in an affidavit is insufficient to raise a material issue of fact in a summary judgment proceeding. *See Hess v. McLean Feedyard, Inc.,* 59 S.W.3d 679, 686 (Tex.App.-Amarillo 2000, pet. denied).

▆▆▆ The Texas Supreme Court has explained that when testimony is challenged as being non-probative on its face, or as conclusory, "there is no need to go beyond the face of the record to test its reliability." *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 233 (Tex.2004). A challenge that an opinion is conclusory can be made "even in the absence of any objection to its admissibility." *Id.; see also City of San Antonio v. Pollock,* 284 S.W.3d 809, 818 (Tex.2009). In contrast, "when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis." *Coastal Transp. Co.,* 136 S.W.3d at 233.

Dr. Kanojia's report references the materials he consulted. Goodyear made no complaint in the trial court or on appeal about the lack of discovery responses from plaintiff. *See* Tex.R. Civ. P. 194.2(f)(4),

195.[4] Although the oncologist's affidavit does not itself disclose the specific scientific literature the oncologist consulted, and does not identify what the literature states, the implicit assertion is that the scientific literature reviewed supports his opinion. Rule 705(a) of the Texas Rules of Evidence provides that an "expert may testify in terms of opinion or inference and give the expert's reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise." *See* Tex.R. Evid. 705(a). In this case, the trial court made no ruling requiring disclosure of the scientific literature or benzene exposure evidence on which the treating oncologist relied, and did not strike any of Pink's evidence. In *Arkoma Basin Exploration Co.,* the Supreme Court reasoned as follows concerning the expert's trial testimony in that case:

> [W]e cannot say on this record that his opinions were unreliable or speculative. Nor were they conclusory as a matter of law; Harper did not simply state a conclusion without any explanation, or ask jurors to "take my word for it." It is true that without the foundational data in the appellate record, we cannot confirm that "cash off my runs ... divided by mcf" yielded the $1.62, $1.41, $1.43 and $1.59 prices he calculated as the low range for damages. But experts are not required to introduce such foundational data at trial unless the opposing party or the court insists.

*Arkoma Basin Exploration Co.,* 249 S.W.3d at 390 (footnotes omitted). Rule

---

4. In a footnote in its appellate brief, Goodyear notes that Dr. Kanojia's oral deposition (*see* Tex.R. Civ P. 195.4) was taken after the summary judgment hearing, and "is not part of the summary judgment evidence in this case," but nevertheless argues the testimony establishes his lack of knowledge of the necessary "level of benzene exposure." Generally, an appellate court confines its review to the summary judgment evidence considered by the trial court. *See Arredondo v. Rodriguez,* 198 S.W.3d 236, 239 n. 1 (Tex.App.-San Antonio 2006, no pet.) ("We will not consider evidence that the trial court itself did not consider.")

705(a) does not require the treating oncologist to introduce into evidence the underlying facts or data "unless the opposing party or the court insists." *Id.* at 389–90.

One of the co-worker depositions contained in the record is that of Hamilton Cooper. Cooper testified that in the late 1960s and early 1970s workers at the Goodyear facility washed their hands in benzene. Cooper did not wear a respirator during the benzene hand-washing. According to Cooper, the benzene would "take all that sticky stuff off your hands, and when you would get through your hands would turn ashy white. Like it would take all the oil out or something." Cooper testified he saw Veryl Pink wash his hands in benzene. The summary judgment evidence supports Pink's claim of his direct exposure to benzene at Goodyear, and presents a specific time frame (1960s and 1970s) for that exposure.

The treating oncologist's affidavit explains how he reached the opinion expressed. A reasonable inference from his explanation is that his opinion concerning the cancer derives at least in part from first-hand knowledge and observations made during the treatment. The affidavit explains Dr. Kanojia reviewed the issue of causation in the scientific literature and read the deposition testimony of Pink's co-workers. The summary judgment record includes excerpts from the deposition of one co-worker who testified that workers at Goodyear, including Pink, washed their hands in benzene. Dr. Kanojia's affidavit states he reviewed the medical records, and the affidavit states the basis for his diagnosis and treatment. While causal connection does not turn on the use of this or any other particular phrase or term, Dr. Kanojia grounds his opinion under oath on reasonable medical probability. We cannot say in this no-evidence summary judgment review that the opinion concerning etiology, expressed by the oncologist treating the cancer, was "conclusory as a matter of law." *See generally Arkoma Basin Exploration Co.*, 249 S.W.3d at 389 (foundational data); *Ins. Co. of N. Am. v. Myers*, 411 S.W.2d 710, 714 (Tex.1966) (reasonable medical probability); *see also King Ranch, Inc.*, 118 S.W.3d at 750–51 (no-evidence summary judgment standard of review).

## GOODYEAR'S RELIABILITY OBJECTIONS TO THE ONCOLOGIST'S AFFIDAVIT

■ A review of the underlying methodology, technique, or foundational data may nevertheless reveal the opinion to be unreliable and inadmissible as evidence. *See Transcon. Ins. Co. v. Crump*, —— S.W.3d ——, ——–—— (Tex.2010). Goodyear filed reliability objections to Pink's evidence under *Borg–Warner Corporation v. Flores*, 232 S.W.3d 765 (Tex. 2007) and *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997), and makes the same arguments on appeal in support of the summary judgment. According to Goodyear, Kanojia's affidavit lacks three preliminary assessments that Goodyear argues are necessary to establish that exposure to benzene caused renal cell carcinoma in Veryl Pink: (1) an analysis of whether renal cell carcinoma "can be related to chemical exposure by a biologically plausible theory"; (2) an examination of whether Veryl Pink was exposed to benzene "in a manner that can lead to absorption into the body"; and (3) an opinion as to whether the dose to which Pink was exposed is sufficient to cause renal cell carcinoma. *See Borg–Warner Corp.*, 232 S.W.3d at 771 (quoting Bernard D. Goldstein & Mary Sue Henifin, REFERENCE GUIDE ON TOXICOLOGY, IN FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 401, 419 (2d ed. 2000)).

The *Borg–Warner* plaintiff brought claims for negligence and strict liability. *Id.* at 774. The Supreme Court required evidence of dose in that case and held that both claims required proof that exposure to the toxic substance (asbestos fibers) was a substantial factor in causing the injury (interstitial lung disease). *Id.* at 766, 773–74. The Court reasoned that asbestosis appears to be dose-related: the more one is exposed to asbestos the more likely one is to develop the disease. *Id.* at 771–74. Dose "refers to the amount of chemical that enters the body[.]" *Id.* at 770 (quoting David L. Eaton, *Scientific Judgment and Toxic Torts—A Primer in Toxicology for Judges and Lawyers*, 12 J.L. & PoL'y 5, 11 (2003)). The Court distinguished situations in which workers were "so covered with asbestos as to be dubbed 'the snowmen of Grand Central'" from situations in which a worker's exposure was from the grinding of brake pads containing embedded asbestos. *Id.* at 774 (quoting *Temple–Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 95 (Tex. 1999)). In considering dose in the asbestosis context, the Court explained that "substantial-factor causation, which separates the speculative from the probable, need not be reduced to mathematical precision. Defendant-specific evidence relating to the approximate dose to which the plaintiff was exposed, coupled with evidence that the dose was a substantial factor in causing the asbestos-related disease, will suffice." *Id.* at 773. The Court further noted "that proof of causation may differ depending on the product at issue[.]" *Id.*

Pink argues that the quantitative dose analysis required by *Borg–Warner* does not apply here. *See id.* at 772–73. While agreeing generally that "the dose makes the poison," Pink apparently disputes the existence of any measurably "safe" or threshold dose for benzene, a known carcinogen. *See id.* at 770 (dose and poison); *Ellender*, 968 S.W.2d at 922 (contention that the only "safe" level of benzene exposure was "zero"); *see also Pollock*, 284 S.W.3d at 813; *McCelvey v. State*, 143 S.W.3d 522, 528, 537 (Tex.App.-Austin 2004, pet. ref'd) (benzene as known carcinogen).

Pink also contends the summary judgment evidence establishes (1) that, as the sole employer, Goodyear is responsible for all of Pink's significant benzene exposure; and (2) Pink received substantial skin and inhalation exposure above any permissible or threshold level by bathing his hands in benzene. For these reasons, Pink argues, no quantification of dose is necessary. Goodyear responds that "if the evidence in this case is as [Pink] characterizes it— substantial, significant exposure to large, vast amounts of benzene—then *Borg–Warner's* quantitative requirement is not an onerous standard to meet."

## THE LACK OF A *ROBINSON* HEARING RECORD

A trial court has a heightened responsibility to act as a gatekeeper to screen out unreliable expert evidence. *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 590 (Tex.1999); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998); *see E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556–57 (Tex. 1995). The examination of an expert's methodology, technique, or foundational data is a task for the trial court in its role as gatekeeper. *Coastal Transp. Co.*, 136 S.W.3d at 233 (citing *Maritime Overseas Corp.*, 971 S.W.2d at 412). But, generally, a *Robinson* determination is "not an analysis that should be undertaken for the first time on appeal." *Id.* By requiring that the trial court address the issue first, "a full record will be developed," and this Court will be able to evaluate the "suffi-

ciency of the evidence without looking beyond the appellate record." *Id.*

Pink contends this Court need not decide the reliability issues raised by Goodyear in this appeal, because Goodyear waived its reliability objections challenging the expert's foundational data by failing to obtain a ruling on the objections. Generally, a party is required to obtain an express ruling on its objections to summary judgment evidence. *See Mitchell v. Baylor Univ. Med. Ctr.,* 109 S.W.3d 838, 842 (Tex. App.-Dallas 2003, no pet.); *Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 317 (Tex. App.-San Antonio 2000, no pet.).

> [R]ulings on a motion for summary judgment and objections to summary judgment evidence are not alternatives; nor are they concomitants. Neither implies a ruling—or any particular ruling—on the other. In short, a trial court's ruling on an objection to summary judgment evidence is not implicit in its ruling on the motion for summary judgment; a ruling on the objection is simply not "capable of being understood" from the ruling on the motion for summary judgment.

*Stafford,* 32 S.W.3d at 317. A ruling sustaining Goodyear's objections to the causation opinion is not implicit in the trial court's ruling on the motion for summary judgment. *See id.* Specifically, Goodyear's motion asserted no-duty and no-breach as independent grounds for summary judgment, and the trial court may have erroneously granted the motion on either of those grounds without considering the *Robinson* objections to the causation affidavit. Generally, "[e]vidence that has been objected to remains part of the summary judgment proof unless an order sustaining the objection is reduced to writing, signed, and entered of record." *Mitchell,* 109 S.W.3d at 842; *but see Trusty v. Strayhorn,* 87 S.W.3d 756, 759–

60 (Tex.App.-Texarkana 2002, no pet.) (discussing implicit rulings).

A contrary conclusion, that the trial court implicitly sustained Goodyear's objections and found the causation affidavit unreliable and so inadmissible, would require, arguably, that two standards of review be applied here, but without a record of the Rule 104(a) determination. *See* Tex.R. Evid. 104(a); *see generally Munoz v. Orr,* 200 F.3d 291, 300 (5th Cir.2000) (recognizing different standards of review in federal court); *but see Frias v. Atl. Richfield Co.,* 104 S.W.3d 925, 927–28 (Tex. App.-Houston [14th Dist.] 2003, no pet.) (applying only abuse of discretion standard). A ruling excluding evidence as unreliable under *Robinson* is reviewed under an abuse of discretion standard. *See Whirlpool Corp. v. Camacho,* 298 S.W.3d 631, 638 (Tex.2009). A no-evidence summary judgment is reviewed under the same legal sufficiency standard as applied to a directed verdict. *King Ranch, Inc.,* 118 S.W.3d at 750–51 (legal sufficiency standard). We apply the summary judgment standard in this appeal. If the trial court did not abuse its discretion in implicitly sustaining the *Robinson* challenge, however, there would be no affidavit by the treating oncologist to consider and no causation evidence in response to the no-evidence motion for summary judgment. In practical effect, this approach would reduce the summary judgment appellate review standard to an abuse of discretion standard whenever case-determinative *Robinson* objections, coupled with a no-evidence motion for summary judgment, are considered implicitly sustained by the granting of summary judgment. Whether or not the trial court abused its discretion in sustaining the *Robinson* objections would be determinative on appeal of whether the summary judgment must be reversed or affirmed.

A fusion of review standards cannot be avoided simply by requiring an express ruling on the *Robinson* challenge, along with a ruling on the no-evidence summary judgment motion, but an express Rule 104(a) determination does clarify the process followed in the trial court, and notifies the nonmovant that the expert's opinion is ruled inadmissible before summary judgment is granted. An express ruling tells the parties and the appellate court "what summary judgment evidence was considered by the trial court in reaching its decision." *Crocker v. Paulyne's Nursing Home, Inc.*, 95 S.W.3d 416, 420 (Tex. App.-Dallas 2002, no pet.). An opportunity to cure a defect in summary judgment evidence is provided in the summary judgment rule. *See* TEX.R. CIV. P. 166a(f) (opportunity to cure defects in form of affidavits and attachments); TEX.R. CIV. P. 166a(g) (Trial court may allow opportunity to obtain additional affidavit or deposition testimony to support claims.). Because Rule 705(a) allows the expert to express an opinion without first introducing the underlying facts or data, unless the court requires the disclosure, an express ruling notifies the nonmovant of that ruling as well and permits an opportunity to comply with the ruling. *See* TEX.R. EVID. 705(a).

### THE NECESSITY FOR AN EXPRESS RULING ON GOODYEAR'S OBJECTIONS

 We conclude an express ruling on Goodyear's *Robinson* objections to the methodology, technique, or foundational data was required to exclude as unreliable the treating oncologist's causation opinion. *See Mitchell*, 109 S.W.3d at 842; *Crocker*, 95 S.W.3d at 420 ("It is well established that rulings on summary judgment evidence must be reduced to writing."); *but see Weiss v. Mech. Associated Servs., Inc.*,

989 S.W.2d 120, 124 n. 6 (Tex.App.-San Antonio 1999, pet. denied) ("[T]he trial court's order is, in effect, a ruling on the defendant's *Robinson* challenge."). When a party submits both this type of a *Robinson* challenge and a no-evidence motion for summary judgment, the trial court is presented with two different applicable procedures. *See* David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 HOUS. L. REV. 1379, 1450 (2010); Harvey Brown, *Procedural Issues Under Daubert*, 36 HOUS. L. REV. 1133, 1148–49 (1999). In a *Robinson* hearing, the party offering the expert's testimony has the burden to show the testimony is admissible, and "[i]n making its determination the court is not bound by the rules of evidence except those with respect to privileges." *See* TEX.R. EVID. 104(a); *Robinson*, 923 S.W.2d at 557–58. The summary judgment rule states that "[n]o oral testimony shall be received" at the summary judgment hearing. TEX.R. CIV. P. 166a(c). Yet, when considering a *Robinson* challenge in a Rule 104(a) hearing, a trial court should allow the offering party an opportunity to present the best available evidence, which may include oral testimony. *See Maritime Overseas Corp.*, 971 S.W.2d at 411. If the evidence is admissible in a summary judgment proceeding, the court must assume that the evidence favorable to the nonmovant is true. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Considered with notice and opportunity-to-be-heard principles, these differences require that the two proceedings be separate under the circumstances of this case, and that we not consider Goodyear's reliability objections as implicitly sustained by the trial court.[5]

---

5. Resolution of the overlapping issues necessarily turns on the circumstances of the particular case under review. Trial courts have discretion on "how to hold" a *Robinson* hear-

The Supreme Court has considered an appeal in which the trial court first held a Rule 104(a) hearing, and then ruled on a motion for summary judgment. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 716–18 (Tex.1998); *see also* Tex.R. Evid. 104(a); *see also generally Munoz*, 200 F.3d at 300 (recognizing different standards of review); *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 493 (N.D.Tex.2001), *aff'd*, 51 Fed. Appx. 482 (5th Cir.2002). By conducting a separate *Robinson* hearing before considering a no-evidence motion for summary judgment, the trial court applies the process applicable to each hearing, provides the parties notice and an opportunity to present the best available evidence, and provides the appellate court with a full record for review. That process is required here.

### Conclusion

▆▆▆▆ The summary judgment process is intended to dispose of "patently unmeritorious" claims when a full evidentiary hearing is unnecessary. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n. 5 (Tex.1979); *see also generally Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256–57, 68 S.Ct. 1031, 92 L.Ed.

1347 (1948) (federal summary judgment procedure "salutary where issues are clear-cut and simple[.]"). The summary judgment procedure is not intended to deprive a party of a right to a full hearing on the merits of any real issue of fact. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *see also generally Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944) (Summary judgment is appropriate "where it is quite clear what the truth is[.]")". The process missing from this appellate record, and necessary in this case, is a *Robinson* hearing. *See generally* Tex.R. Evid. 104(a). If the trial court decides the affidavit must be stricken because of unreliable foundational data, methodology, or technique, or for some other reason, the trial court may then decide whether to grant the no-evidence summary judgment, or "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." *See* Tex.R. Civ. P. 166a(g). Without an express ruling that the treating oncologist's causation opinion is unreliable, however, the treating oncologist's affidavit remains part of the summary judgment proof and provides some evidence to defeat

---

ing. *See Piro v. Sarofim*, 80 S.W.3d 717, 720 (Tex.App.-Houston [1st. Dist.] 2002, no pet.) ("The lawyers did not present authority—either at trial or on appeal—that *Robinson* requires such a live hearing, and we are not aware of any."). In some instances, appellate courts have concluded a trial court is not required to hold a separate hearing. *See Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 19–20 (Tex.App.-Fort Worth 2002, no pet.); *Weiss v. Mech. Associated Servs., Inc.*, 989 S.W.2d 120, 124 n. 6 (Tex.App.-San Antonio 1999, pet. denied). Nonmovants have been well-advised to provide detailed affidavits or deposition testimony to preclude a reliability challenge, and to request a continuance or a *Robinson* hearing if necessary, regardless of Rule 705(a), any due process considerations,

or the lack of a requirement "to marshal its proof" in response to a no-evidence motion for summary judgment. *See Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 246 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *see also* Tex.R. Civ. P. 166a & cmt. to 1997 change. *See* David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 Hous. L.Rev. 1379, 1450 (2010); 3 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Practice § 18:19 (2d ed. 2000 & Supp. 2009); Harvey Brown, *Procedural Issues Under Daubert*, 36 Hous. L. Rev. 1133, 1148–49 (1999). To do otherwise is to risk "final decisions on procedural grounds[.]" *Gonzalez v. U.S. Fid. & Guar. Co.*, 154 Tex. 118, 274 S.W.2d 537, 540–41 (1955).

the no-evidence motion for summary judgment on causation. *See Mitchell,* 109 S.W.3d at 842 (objected-to evidence remains part of summary judgment proof without an order expressly sustaining the objection); *Cain v. Rust Indus. Cleaning Servs., Inc.,* 969 S.W.2d 464, 466 (Tex. App.-Texarkana 1998, pet. denied).

We affirm the judgment as to Texaco. We reverse the summary judgment granted Goodyear for the reasons stated, and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

STEVE McKEITHEN, Chief Justice, concurring in part and dissenting in part.

I concur in the majority's opinion affirming the judgment as to Texaco. I respectfully dissent to the reversal of the judgment that pertains to Goodyear.

Goodyear's motion for summary judgment asserted there was no evidence of duty, breach, or proximate cause. On appeal, Goodyear asserts that no evidence supports Pink's claim that workplace exposure to benzene caused Veryl Pink's terminal cancer. I agree. Pink argues, and the majority agrees, that Dr. Kanojia's affidavit presents more than a scintilla of evidence that Veryl Pink's cancer was caused by workplace exposure to benzene. In his affidavit, Dr. Kanojia explains his opinion and its basis, as follows:

> I was Veryl Pink's treating oncologist. Mr. Pink was diagnosed with renal cell carcinoma, which was confirmed by biopsy. The ultimate cause of Mr. Pink's death was the progression of the disease.
>
> Based upon reasonable medical probability it is my opinion that the cause of Mr. Pink's renal cell carcinoma was exposure to chemicals, most likely benzene. In rendering this opinion I have reviewed Mr. Pink's medical records, the deposition testimony of Mr. Pink and three of his co-workers, the deposition of Dr. Radelt, and scientific literature.

"Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *City of San Antonio v. Pollock,* 284 S.W.3d 809, 816 (Tex.2009). A conclusory statement by an expert cannot be considered probative evidence "if no basis for the opinion is offered, or the basis offered provides no support[.]" *Id.* at 818. Kanojia's affidavit lacks three preliminary assessments that are necessary to establish that exposure to benzene caused renal cell carcinoma in Veryl Pink: (1) an analysis of whether renal cell carcinoma "can be related to chemical exposure by a biologically plausible theory[;]" (2) an examination of whether Veryl Pink was exposed to benzene "in a manner that can lead to absorption into the body[;]" and (3) an opinion as to whether the dose to which Veryl Pink was exposed is sufficient to cause renal cell carcinoma. *See Borg–Warner Corp. v. Flores,* 232 S.W.3d 765, 771 (Tex.2007). The majority correctly points out that Kanojia's affidavit neither discloses what scientific literature was consulted nor identifies what the literature states. This amounts to no evidence regarding causation. Although the basis for Dr. Kanojia's opinion that Veryl Pink died from renal cell carcinoma is evident from the affidavit, the same cannot be said for Dr. Kanojia's opinion that benzene exposure caused Veryl Pink's renal cell carcinoma. Benzene exposure may or may not be a known cause of renal cell carcinoma, but Dr. Kanojia's affidavit neither states that benzene exposure is a known cause of renal cell carcinoma nor explains how Dr. Kanojia's training and experience enable him to express an opinion regarding whether benzene causes renal cell carcinoma. Because the affidavit amounts to no

evidence, no *Robinson* hearing was required.

The summary judgment evidence includes the deposition testimony of Hamilton Cooper. Cooper testified that in the late 1960s and early 1970s, workers at the Goodyear facility washed their hands in benzene. He did not wear a respirator when he washed his hands in benzene. Cooper testified that he saw Veryl Pink wash his hands in benzene, but Cooper did not indicate whether that observation was a single incident or a common occurrence. The summary judgment record contains no evidence concerning the long-term effect of washing one's hands in benzene either once or over a period of time. There is summary judgment evidence that Veryl Pink received direct exposure to benzene on at least one occasion, and it may be inferred that he could have been exposed to benzene to some extent throughout the late 1960s and early 1970s, but the summary judgment record does not supply evidence regarding the effect of exposure to benzene on one's health.

This case presents a much more fundamental analytical gap than the deficiency found in *Borg–Warner*. *See Borg–Warner*, 232 S.W.3d at 771–72. In that case, the plaintiff's expert identified a treatise that discussed the asbestos-related risks to brake mechanics and testified that a 1968 article explained that respirable fibers remain after the braking process so that brake mechanics can be exposed to them. *Id.* at 767. The evidence was insufficient because there was "no evidence of the approximate quantum of Borg–Warner fibers to which Flores was exposed, and whether this sufficiently contributed to the aggregate dose of asbestos Flores inhaled, such that it could be considered a substantial factor in causing his asbestosis." *Id.* at 772. Here, Dr. Kanojia provides no information relating kidney cancer to ben-

zene, either as a dose-related disease caused by benzene exposure or through some disease-causing mechanism that is unrelated to dose. The only information Dr. Kanojia provides regarding why in his opinion the cause of Veryl Pink's renal cell carcinoma was "exposure to chemicals, most likely benzene" is his review of "Mr. Pink's medical records, the deposition testimony of Mr. Pink and three of his co-workers, the deposition of Dr. Radelt, and scientific literature." In the absence of any explanation of how the records, testimony, and literature supported his opinion on medical causation, Dr. Kanojia's affidavit is mere *ipse dixit* of a credentialed witness. *See Pollock*, 284 S.W.3d at 816. Pink not only provided no quantitative proof that Veryl Pink experienced benzene exposure sufficient to cause his disease, Pink provided no evidence that any quantity of benzene exposure will cause renal cell carcinoma.

The summary judgment evidence does not establish a fact issue regarding whether Veryl Pink's exposure to benzene while working at the Goodyear plant was a substantial factor in the development of the renal cell carcinoma that led to his death. Because Pink failed to produce any evidence sufficient to raise a fact issue on at least one element of each of Pink's claims against Goodyear, the trial court did not err in granting Goodyear's motion for summary judgment. I would affirm the judgment as to Goodyear.