**Opinion issued August 6, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00564-CV**

———————————

**JOSE CEPEDA, Appellant**

**V.**

**ASCEND PERFORMANCE MATERIALS TEXAS, INC., Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-66106**

---

**MEMORANDUM OPINION**

This appeal arises from a suit for personal injury. Jose Cepeda sued Ascend Performance Materials Texas, Inc. for negligence, alleging that he was injured by chemical exposure while working for a third party at Ascend's manufacturing facility. Ascend moved for summary judgment on Cepeda's claim. Ascend asserted, among other things, that Cepeda failed to designate an expert witness as to causation.

Thus, there was no probative evidence on the essential element of causation. The trial court granted summary judgment for Ascend and ordered that Cepeda take nothing on his claim.

Cepeda now appeals. In three issues, Cepeda contends that the trial court erred in rendering a take-nothing summary judgment against him because he presented evidence raising material fact issues on causation and liability. Cepeda also claims that the trial court erred in denying his third motion for continuance.

We affirm.

## Background

Ascend owns and operates a chemical manufacturing facility in Alvin, Texas. Turner Industries Group, LLC,[1] is an independent contractor that, at the time relevant to this appeal, was providing industrial maintenance services at Ascend's facility.

On January 9, 2020, Cepeda, a Turner employee, was working with a Turner multi-craft crew assigned to assist with maintenance of a heat exchanger at the facility. The work involved installing "blinds" in the system to prevent chemical escape.

According to Cepeda, as he was removing bolts from a cover, liquid contacted his gloved left hand. Minutes later, his hand began to tingle. He washed his hand but did not seek medical attention or immediately report the incident to Ascend.

---

[1] Turner is not a party to this appeal.

2

The next day, a rash appeared on Cepeda's left hand. Cepeda spoke with a workplace friend, Joseph Kelso, who was an Ascend operator but not present at the time of the incident. According to Cepeda, Kelso identified various chemicals possibly present in that part of the facility, which included "liquid acrylic nitrogen" or "acrylonitrile."[2]

On January 13, 2020, Cepeda sought medical treatment and was prescribed silver sulfadiazine topical cream. Over the next few days, the rash worsened—spreading to his right hand and a foot—and blisters appeared. After beginning another topical cream and antiviral medication, Cepeda developed an itchy rash on his back and legs. He was re-evaluated and prescribed new medication.

By February 3, 2020, according to his medical records, Cepeda's blistered areas were healed and the rash was improving. But he reported weakness in his left hand and underwent occupational therapy.

By March 2020, the weakness had resolved, and Cepeda denied having any pain. In October 2020, a physician evaluated Cepeda and noted:

> [H]e is working presently at a scaffold company. . . . He states that he had some issues with the treatment that he had for the burns to his hands and his foot. He had an allergic reaction. He had some decrease in grip strength, which is steadily getting better. He also had a diffuse body reaction with blisters and he saw the dermatologist who told him that that should eventually get better and resolve. He is not using any medications at this time. . . He does not have any scarring or tenting.

---

[2]    The parties use the terms "liquid acrylic nitrogen" and "acrylonitrile" interchangeably. Nothing in the record before us addresses any distinction.

He is able to wear boots at work without any problems. No other issues are noted otherwise at this time. He is not seeing any specialist and he is not under any care or treatment.

A year later, in October 2021, Cepeda sued Ascend for negligence. Cepeda alleged that Ascend had a duty to properly train and supervise its employees, to maintain a safe workplace, and to warn of dangerous conditions. He alleged that Ascend breached these duties and, as a result, he was exposed to liquid acrylic nitrogen, which caused him to suffer corrosion, second-degree burns, partial-thickness burns, Stevens-Johnson erythema multiforme exudativum, post-inflammatory hyperpigmentation, lichen simplex chronicus, neuropathy, chronic denervation and reinnervation, and pain. Cepeda sought over $1,000,000.00 in damages.

Ascend moved for summary judgment on three grounds. First, Ascend asserted that there is no evidence of causation. Specifically, it asserted that there is no evidence of a causal link (1) between the alleged conduct by Ascend and the alleged chemical exposure at its facility and (2) between the alleged exposure and the "complex and relatively obscure injuries" Cepeda asserts as a result.

With respect to the second prong, Ascend argued that Cepeda failed to present probative evidence of general and specific causation—that he failed to present evidence that he was exposed to a substance that is generally capable of causing the type of injuries at issue and that the substance caused his specific injuries. Ascend

4

asserted that Cepeda was required, and failed, to present any expert testimony on these issues.

Cepeda responded that his own deposition testimony about Kelso's belief that he was exposed to liquid acrylic nitrogen was sufficient to raise a fact issue as to causation. He also pointed to a work order suggesting that acrylonitrile was present at Ascend's facility; to a Material Safety Data Sheet (MSDS) stating that exposure to acrylonitrile can cause skin reactions; and to his medical records.

Next, Ascend argued that its status as a property owner brings it within the purview and protections of Chapter 95 of the Texas Civil Practice and Remedies Code[3] and that there is no evidence it controlled the operative details of Turner's work or that it had actual knowledge of the alleged dangerous condition.

The trial court granted Cepeda two continuances to depose Kelso. After Cepeda was unsuccessful and sought a third continuance, Ascend objected on the ground that Kelso lacked personal knowledge of the incident, was not qualified to render a medical or expert opinion, and was not designated as an expert witness. Ascend argued that Kelso's lay testimony, regardless of its substance, could not constitute competent causation evidence.

---

[3]     *See* TEX. CIV. PRAC. & REM. CODE §§ 95.001–.004. "When applicable, Chapter 95 limits a real property owner's liability for common-law negligence claims that arise out of a contractor's or subcontractor's work on an improvement to the property." *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 825 (Tex. 2022) (internal quotations omitted).

5

After a hearing, the trial court denied Cepeda's request for a third continuance, rendered a take-nothing summary judgment for Ascend, and dismissed this suit.

## Summary Judgment

Cepeda's first issue regarding causation is dispositive of this appeal. Cepeda argues that the trial court erred in rendering summary judgment against him because his evidence raises material fact issues as to the causation element of his negligence claim. He contends that expert testimony is not required to establish that he sustained injuries as a result of exposure to liquid acrylic nitrogen because, according to Cepeda, "causation is readily observable by the trier of fact." We disagree.

### *Standard of Review*

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* If a trial court grants summary judgment without specifying the grounds for granting the motion, as here, we must uphold the trial court's judgment if any one of the asserted grounds is meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.— Houston [1st Dist.] 2005, pet. denied).

To prevail on a motion for no-evidence summary judgment,[4] the movant must establish that there is no evidence to support an essential element of the non-movant's claim. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present more than a scintilla of probative evidence to raise a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

"More than a scintilla of evidence exists when the evidence . . . rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted). A no-evidence summary judgment is properly granted if the non-movant produces no more than a scintilla of probative evidence on an essential element of the cause of action. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018).

---

[4] Ascend moved for summary judgment under both the no-evidence and traditional standards. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(c), (i). When a party seeks summary judgment on both grounds and the trial court's order does not specify its reasons for granting summary judgment, we first review the propriety of the summary judgment under the no-evidence standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(i). Because we conclude below that the trial court did not err in granting summary judgment under the no-evidence standard, we do not reach whether it erred in granting summary judgment under the traditional standard. *See Ridgway*, 135 S.W.3d at 600; *see also* TEX. R. CIV. P. 166a(c).

*Legal Principles*

A negligence cause of action requires proof of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015).

To establish the essential element of causation in a personal-injury case, a "plaintiff must prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). "[C]hemical-exposure plaintiffs must prove both general and specific causation." *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 36 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). "General causation asks whether a substance is capable of causing a particular injury in the general population; specific causation asks whether that substance caused a particular individual's injury." *Id.* "Proving one type of causation does not necessarily prove the other, and logic dictates that both are needed for a chemical-exposure plaintiff to prevail." *Id.* at 36–37.

Whether expert testimony is necessary to prove causation is a question of law. *See Tamez*, 206 S.W.3d at 583. Lay testimony will suffice when general experience and common sense will enable a lay person to determine the causal connection between the event sued upon and the injuries. *Abraham v. Union Pac. R.R. Co.*, 233 S.W.3d 13, 18 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). However,

8

"[t]he general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). And "[t]he existence of a causal connection between exposure to a certain chemical and injury or disease requires specialized expert knowledge and testimony because such matters are not within the common knowledge of lay persons." *Abraham*, 233 S.W.3d at 18; *see Smith*, 176 S.W.3d at 36.

### *Discussion*

Here, in order for Cepeda's negligence claim to survive Ascend's motion for no-evidence summary judgment, Cepeda was required to present more than a scintilla of probative evidence of causation. That is, he was required to show evidence of two causal links: (1) that an alleged breach of duty by Ascend caused him to be exposed to acrylonitrile (or some other chemical) *and* (2) that such exposure caused his complained-of injuries. *See Crye*, 907 S.W.2d at 499; *Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 603 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Under the second prong, Cepeda was required to present evidence of "both general *and* specific causation." *Smith*, 176 S.W.3d at 36 (emphasis added). Specifically, Cepeda was required to present evidence that acrylonitrile is generally capable of causing the injuries at issue *and* that it specifically caused his injuries.

9

*See id*. at 36–37. Because it is dispositive, our analysis here focuses on Cepeda's evidence that he was exposed to acrylonitrile and that acrylonitrile caused his injuries.

First, with respect to exposure to acrylonitrile, Cepeda points to his deposition testimony and a work order.

In his deposition, Cepeda testified that he identified the liquid that contacted his gloved hand as "liquid acrylic nitrogen" based solely on a conversation with his workplace friend, Joseph Kelso, a few days afterwards. Cepeda testified that Kelso was not present on the jobsite at the time, but Kelso, a layperson, "mentioned different chemicals," including liquid acrylic nitrogen, that he thought might be present in the equipment where Cepeda was working.

Cepeda's testimony about Kelso's conjecture that he was exposed to acrylonitrile is not probative evidence. Mere speculation and subjective belief, especially by a layperson, amounts to no evidence of causation in a case involving alleged exposure to harmful chemicals. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 78 (Tex. 2023); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (causation "cannot be supported by mere conjecture, guess, or speculation"). And a party "may not avoid a no[-]evidence summary judgment by presenting speculation." *Pink v. Goodyear Tire & Rubber Co*., 324 S.W.3d 290, 297 (Tex. App.—Beaumont 2010, pet. dism'd).

In the work order, in a list of "References" under a heading "Additional Job Description," appears a notation: "Acrylonitrile Program."  But even if we were to conclude that this bare notation constitutes some evidence that acrylonitrile was generally present in some part of Ascend's facility, this notation alone does not constitute any probative evidence that Cepeda was in fact *exposed* to it.[5]

Cepeda argues that a causal connection between an exposure to acrylonitrile and his alleged injuries is nevertheless shown because the acrylonitrile MSDS lists symptoms that he experienced shortly after liquid contacted his gloved hand.  And this causal link is "readily observable" and within the "common understanding of the typical juror."

The acrylonitrile MSDS states that it "[c]auses skin irritation" and "[m]ay cause an allergic skin reaction."  And "[s]ymptoms of allergic reaction may include rash, itching, swelling, trouble breathing, tingling of the hands and feet, dizziness, lightheadedness, chest pain, muscle pain or flushing."

Cepeda's medical records reflect that, on January 13, 2020, he went to a hospital with a rash and complaining of a burn on his left hand, which he attributed to exposure to acrylonitrile.  He was prescribed silver sulfadiazine cream.

---

[5]     Further, this work order pertains to a project with a "Start date [of] 01/13/2020" and an "End date [of] 01/20/2020."  Cepeda alleges that the incident at issue occurred while he was on a project on January 9, 2020—before the start date in the work order.

Over the next few days, the rash spread to his right hand and a foot, and blisters appeared. The medical records state that after applying the cream to his left hand with his right, a rash began on Cepeda's right hand. After he put the cream on his foot, a rash began on his foot. Cepeda's medical records further state that he had "an allergic reaction [to] the sulfadiazine," "[c]ontact dermatitis," or a "virus infection."

After beginning another topical cream and an antiviral medication, Cepeda developed an itchy rash on his back and legs. He was re-evaluated and prescribed new medication.

By February 3, 2020, according to his medical records, Cepeda's blisters were healed and the rash was improving. But he reported weakness in his left hand and underwent occupational therapy. By March 2020, the weakness had resolved, and Cepeda denied having any pain. And, when he was evaluated in October 2020, the physician noted that Cepeda was no longer under any care or treatment.

While evidence of an event followed closely by a manifestation of, or treatment for, conditions that did not appear before the event can raise suspicion that the event at issue caused the condition, suspicion alone is not evidence of causation. *See Guevara*, 247 S.W.3d at 668.

The only conditions apparent in both the acrylonitrile MSDS and Cepeda's medical records are a rash, itching, tingling, and swelling, which are broad

12

symptoms. Cepeda seeks over $1,000,000.00 in damages for an array of specific medical conditions—including corrosion, second-degree burns, partial-thickness burns, Stevens-Johnson erythema multiforme exudativum, post-inflammatory hyperpigmentation, lichen simplex chronicus, neuropathy, and chronic denervation and reinnervation.

Whether there exists a causal link between any exposure to acrylonitrile, or another chemical, and these specific alleged injuries is not a matter within the common knowledge and experience of lay persons. *See Abraham*, 233 S.W.3d at 18; *Smith*, 176 S.W.3d at 36 ("Expert testimony is particularly necessary in chemical-exposure cases, in which medically complex diseases and causal ambiguities compound the need . . . .").[6] And the acrylonitrile MSDS is of "little value to a lay person without expert testimony to explain the link between levels of exposure, symptomology, and the toxicological information contained in the MSDS." *City of Dall. v. Furgason*, No. 05-06-00875-CV, 2007 WL 2703134, at *2 (Tex. App.—Dallas Sept. 18, 2007, no pet.) (mem. op.). Even Cepeda's own medical records reflect that his various conditions may have stemmed from several other possible

---

[6] *See also Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 241 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding general experience and common sense did not enable fair understanding of any causal link between chemical exposure and medical condition); *Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 603 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

causes. When other plausible causes of injuries exist, a plaintiff must offer evidence excluding those causes with reasonable certainty. *Havner*, 953 S.W.2d at 720.

It was therefore Cepeda's burden to provide expert testimony linking these evidentiary pieces together. *See Smith*, 176 S.W.3d at 36–38 (holding competent expert testimony required to connect chemical exposure to injury); *Anderson*, 87 S.W.3d at 611; *Sweeney v. Geon Co.*, No. 01-00-00315-CV, 2002 WL 58223, at *5 (Tex. App.—Houston [1st Dist.] Jan. 17, 2002, pet. denied) (not designated for publication) (holding lay testimony insufficient to establish that exposure to chemicals caused skin lesions). But he failed to do so.

It is undisputed that Cepeda did not present any expert testimony to establish a causal connection between the alleged exposure and his alleged injuries. *See Crye*, 907 S.W.2d at 499. We thus conclude that Cepeda did not met his burden to present more than a scintilla of probative evidence to raise a genuine issue of material fact as to the causation element of his negligence claim. *See Smith*, 176 S.W.3d at 36 ("[P]laintiff must prove that the defendant's conduct caused an event and that this event caused the plaintiff to suffer compensable injuries."); *Sweeney*, 2002 WL 58223, at *4–5.

Because Ascend established its right to summary judgment on Cepeda's negligence claim as a matter of law, we hold that the trial court did not err in

rendering a take-nothing summary judgment in favor of Ascend. *See Tatum*, 554 S.W.3d at 625.

We overrule Cepeda's first issue.[7]

## Conclusion

Based on the record before us, and all the reasons above, we affirm the trial court's summary judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

---

[7] Having concluded that the trial court did not err in granting summary judgment for Ascend on Cepeda's negligence claim, due to there being no evidence of causation, we do not reach Cepeda's second issue, in which he challenges the summary judgment under Chapter 95 of the Civil Practice and Remedies Code. *See* TEX. R. APP. P. 47.1. Further, having concluded that Kelso's lay testimony cannot constitute competent evidence of causation, we do not address Cepeda's third issue, in which he challenges the trial court's denial of his third motion for a continuance. *See id*.