Rachael **PRAYTOR**, Appellant,

v.

**FORD MOTOR COMPANY and Charlie Thomas Ford, Inc.,**
**Appellees.**

No. 14–01–00734–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 12, 2002.

Darrin Mitchell Walker, Kingwood, for appellant.

Amy Douhitt Maddux, Michael P. Lennon, Houston, for appellees.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## CORRECTED OPINION

CHARLES W. SEYMORE, Justice.

Rachael Praytor appeals a judgment in favor of Ford Motor Company on the ground that she presented sufficient evidence of causation to defeat summary judgment. We affirm.

### Factual Background

Praytor was involved in an automobile accident in which the air bag in her Ford Probe deployed. Some time after the accident, she began to suffer from sinusitis and asthma. Praytor filed suit against Ford Motor Company and Charlie Thomas Ford[1] alleging the sinusitis and asthma were caused by exposure to chemicals released when the air bag deployed. Ford filed a no-evidence motion for summary judgment on the ground that Praytor had not produced evidence of causation. Praytor responded by attaching the affidavits of her experts, Dr. Alex Lechin, and Byron Bloch. Ford objected to Praytor's affidavits contending the experts did not meet the requirements of Rule 702 of the Texas Rules of Evidence. Neither party requested a *Robinson–Daubert* hearing prior to the trial court's ruling on the motion for summary judgment. The trial court granted summary judgment in favor of Ford stating, "Plaintiff has not produced legally competent evidence regarding causation, an essential element of her case."

---

1. Appellant later non-suited Charlie Thomas Ford, Inc.

## Standard of Review

The "no-evidence" motion for summary judgment shifts the burden of proof to the non-movant to produce evidence raising a genuine issue of material fact on the contested issue on which the non-movant would bear the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i). In this motion, a party asserts there is no evidence of one or more essential elements of claims upon which the opposing party would have the burden of proof at trial. *Lake Charles Harbor and Terminal Dist. v. Bd. of Trs. of Galveston Wharves*, 62 S.W.3d 237, 241 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Unlike a movant for traditional summary judgment, a movant for a no-evidence summary judgment does not bear the burden of establishing a right to judgment by proving each claim or defense. *Id.* To defeat a "no-evidence" summary judgment motion, the non-movant need not marshal its proof but should only identify more than a scintilla of evidence raising a fact issue on the challenged elements. *See* Tex.R. Civ. P. 166(i) cmt.

Summary judgment is appropriate if the only evidence offered to prove an essential element of the claim cannot be given weight by the court. *W. Wendell Hall, Standards of Review in Texas*, 29 St. Mary's L. 351, 419 (1988). The non-movant may not rely on evidence that is barred from consideration by rules of law or evidence, or that amounts to no more than a scintilla. *Id.* A non-movant presents less than a scintilla of evidence when that which is proffered is "so weak as to do no more than create a mere surmise or suspicion"—the effect being that there is no evidence offered. *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614, 619 (Tex. App.-Eastland 2000, pet. denied).

## Necessity of Expert Testimony

■ Praytor claims the facts established by her summary judgment evidence were sufficient to raise a fact question on causation for several reasons. First, Praytor contends that rule 702 does not apply because lay testimony is adequate to prove causation. To establish causation, a plaintiff must prove the defendant's conduct caused an event and that event caused the plaintiff to suffer compensable damages. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). The causal link between the event sued upon and the plaintiff's injuries must be shown by competent evidence. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984). Lay testimony will suffice when general experience and common sense will enable a lay person fairly to determine the causal nexus. *Weidner v. Sanchez*, 14 S.W.3d 353, 370 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

Here, Dr. Lechin testified in his deposition that there can be several causes of sinusitis and asthma and that the diagnosis of their cause depends on the individual. General experience and common sense do not enable a fair understanding of causation under these circumstances; accordingly, expert testimony is required. *See Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex.1996) (holding plaintiff must provide probative evidence through expert testimony connecting injury to tortious act). Praytor's reliance on *Morgan*, in which the supreme court held that lay testimony sufficiently showed chemical fumes caused an injury, is misplaced. Lay testimony sufficed in *Morgan* because a default judgment left no evidentiary dispute as to whether general experience and common sense could allow a lay person to determine causation. 675 S.W.2d at 733.

## Waiver of Rule 702 Requirements

■ Second, Praytor contends Ford waived its complaint that her expert affida-

vits were inadmissible by failing to obtain a ruling in the trial court. In support of her waiver argument, Praytor relies on *Rogers v. Continental Airlines, Inc.*, 41 S.W.3d 196 (Tex. App.-Houston [14th Dist.] 2001, no pet.) and *Dolcefino v. Randolph*, 19 S.W.3d 906 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In those cases, we held that to preserve error with regard to admissibility of evidence, a party must obtain a ruling from the trial court. *Rogers*, 41 S.W.3d at 200; *Dolcefino*, 19 S.W.3d at 925. Those cases, however, involved an appealing party's attempt to preserve error on the admissibility of evidence.

Here, Praytor carried the burden to produce competent summary judgment evidence. Consequently, her reliance on *Dolcefino* and *Rogers* is misplaced. *See Weiss*, 989 S.W.2d at 124, n. 6. Ford, as the appellee, is not required to preserve error for appeal. Accordingly, Ford did not waive its rule 702 challenge to Praytor's expert witness affidavits. Finally, Praytor was notified of Ford's intent to challenge the qualifications and methodology of her experts when she received appellee's motion for summary judgment. The trial court, in holding that Praytor had failed to present "legally competent evidence," effectively concluded that the expert testimony was either inadmissible or insufficient.

### Rule 702 Challenge in the No–Evidence Summary Judgment Context

■ Rule 702 contains three requirements for the admission of expert testimony: (1) the witness must be qualified; (2) the proposed testimony must be scientific knowledge; and (3) the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. *E.I. du Pont de Nemours and Co., Inc., v.*

*Robinson*, 923 S.W.2d 549, 556 (Tex.1995). In order to constitute scientific knowledge which will assist the trier of fact, the proposed testimony must be relevant and reliable. *Id.*

■ The trial court must make the preliminary decision regarding the expert's qualifications under Rule 104(a). *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex.1998). In *United Blood Services v. Longoria*, 938 S.W.2d 29 (Tex.1997), the Texas Supreme Court required summary judgment proof of an expert's qualifications in support of the response to a motion for summary judgment. *Id.* at 30. As a practical matter, this holding means that a party relying on an expert should not wait until trial to develop the expert's qualifications. The supreme court specifically rejected the approach of waiting for trial. *Id.* at 30 ("no difference obtains between the standards for evidence that would be admissible in a summary judgment proceeding and those applicable at a regular trial."). The party offering the expert's testimony bears the burden to prove the witness is qualified under rule 702. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex.1996). The offering party must demonstrate that the witness "possesses special knowledge as to the very matter on which he proposes to give an opinion." *Gammill*, 972 S.W.2d at 718. As an appellate court, we may not disturb a trial court's determination that a witness is unqualified as an expert unless a clear abuse of discretion is shown. *Id.* at 718–19. An expert may testify on scientific, technical, or other specialized subjects if the testimony would assist the fact finder in understanding the evidence or determining a fact issue. Tex.R. Evid. 702.

■ Praytor offered affidavits from two experts, Dr. Alex Lechin and Byron Bloch. Dr. Lechin is a medical doctor, board certified in pulmonary medicine. In

his affidavit, he states that he reviewed medical literature concerning exposure to the chemicals released by air bag deployment. Lechin admitted in his deposition that he is not an expert on asthma, the causes of asthma, or whether deployment of an air bag can cause asthma. Further, Lechin does not purport to be an expert on the toxicity of chemicals released when an air bag deploys. Dr. Lechin's medical expertise is greater than that of the general population, but Praytor did not establish that his expertise on the issue of cause in fact met the requisites of Rule 702.

 Similarly, there is sound basis for the trial court to conclude that Byron Bloch is not qualified to render an opinion on whether deployment of the air bag caused Praytor's respiratory symptoms. Bloch stated, in his affidavit, that he is an independent consultant on automotive safety design and vehicle crashworthiness. He has been qualified and given testimony as an expert in matters pertaining to defective automobiles. Further, Bloch is familiar with the air bag system that was in the automobile owned by Praytor. Bloch, however, professes no knowledge of the possible causes of respiratory illness.

We acknowledge the difficult circumstance Praytor faces in fulfilling requirements for presentation of expert testimony under rule 702. However, we are constrained to render our decision solely on the summary evidence presented in response to Ford's no-evidence motion for summary judgment. Accordingly, we hold the trial court did not abuse its discretion if it found that Praytor's experts were not qualified.

 In addition to qualification of an expert witness, rule 702 requires that the proposed testimony must be relevant and reliable. *Robinson*, 923 S.W.2d at 556. To be relevant, the proposed testimony must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir.1985). Evidence that has no relationship to any of the issues in the case is irrelevant and does not satisfy the requirement that the testimony be of assistance to the jury. 3 WEINSTEIN & BERGER, WEINSTEIN'S EVIDENCE, ¶ 702 (1994).

 In addition to the relevancy requirement, the underlying scientific technique or principle must be reliable. Expert testimony that is not grounded in methods and procedures acknowledged by scientists in the particular field of study amount to no more than subjective belief or unsupported speculation. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–90, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993). Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under rule 702. *Robinson*, 923 S.W.2d at 557. Although noting that the facts the trial court may consider in making its determination will differ in each case, the *Robinson* court offered the following as a non-exclusive list of factors to be considered by the trial court:

1. the extent to which the theory has been tested;

2. the extent to which the technique relies on the expert's subjective interpretation;

3. whether the theory has been subject to peer review;

4. the technique's potential rate of error;

5. whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

6. the nonjudicial uses that have been made of the theory or technique.

*Robinson*, 923 S.W.2d at 557. Application of the *Robinson* factors is germane to evaluating whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers. *Gammill*, 972 S.W.2d at 725. Although these factors may not apply in all cases, we cannot ignore them when scientific testimony attempts to link a chemical exposure to a medical condition. *See Daubert*, 509 U.S. at 593–95, 113 S.Ct. 2786; *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 715–16 (Tex. 1997).

With regard to whether a plaintiff's injury was caused by exposure to a particular substance, a plaintiff generally must prove both that the substance is capable of causing a particular injury or condition and that the substance in fact caused the plaintiff's injury. *Havner*, 953 S.W.2d at 715–16. In the absence of direct evidence of causation, the plaintiff can attempt to demonstrate that exposure to the substance increases the risk of a particular injury. *Id.* at 706. Reliable evidence of this nature can be produced through epidemiological studies. Epidemiological studies examine existing populations to attempt to determine if there is an association between a disease or condition and a factor suspected of causing that disease or condition. *Havner*, 953 S.W.2d at 715. Recognizing that epidemiological studies cannot establish the actual cause of an individual's injury or condition, courts have been willing to recognize that epidemiological studies showing an increased risk may support a recovery. *Id.* Neither Dr. Lechin, nor Mr. Bloch relied on data or peer reviewed studies that demonstrate the effect of toxin emission on occupants of automobiles resulting from air bag deployment. Further, neither expert relied on any particular theories that had been or could be tested.

In his affidavit, Dr. Lechin averred that he was Praytor's treating physician. After reviewing medical literature concerning exposure to chemicals released in air bag deployment, he determined that Praytor's asthma and sinusitis were caused by her exposure to chemicals released when the air bag deployed. A treating physician's assertion that a physical examination confirmed causation should not be accepted at face value. *Havner*, 953 S.W.2d at 714. Reviewing the *Robinson* factors, Lechin does not state whether his theory has been tested, subject to peer review, or that his theory is generally accepted outside of the courtroom by the relevant scientific community. In his deposition, Lechin states, while on call in the emergency room, he treated two patients with similar symptoms following automobile accidents in which an air bag deployed. Lechin's treatment of those two patients and Praytor does not qualify as a scientific study that meets the statistical requirements of *Havner* or that can be tested or reviewed by Lechin's peers. Lechin states that he has relied on medical literature in his diagnosis, but fails to explain what literature he read or whether the literature consists of peer-reviewed studies, which would support his theory of causation. Finally, the potential rate of error appears significant given Dr. Lechin's inability to rule out other possible causes of Praytor's illnesses.

Praytor claims she has produced evidence of causation by showing a temporal relationship between her exposure to the toxic chemical and the onset of her symptoms. For this proposition, appellant cites *Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir.1999); *Zuchowicz v. United States*, 140 F.3d 381 (2nd Cir.1998); and *Kennedy v. Collagen Corp.*, 161 F.3d 1226 (9th Cir.1998). In *Westberry* and

*Zuchowicz,* the courts held that a reliable differential diagnosis provides a valid foundation for an expert opinion. *Westberry,* 178 F.3d at 264; *Zuchowicz,* 140 F.3d at 388.

Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated. *See Baker v. Dalkon Shield Claimants Trust,* 156 F.3d 248, 252–53 (1st Cir.1998). A reliable differential diagnosis typically, though not invariably, is performed after physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests, and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely. *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 807 (3d Cir.1997). This technique "has widespread acceptance in the medical community, has been subject to peer review, and does not frequently lead to incorrect results." *Brown v. Southeastern Penn. Transp. Auth. (In re Paoli R.R. Yard PCB Litig.),* 35 F.3d 717, 758 (3d Cir.1994).

Praytor also cites *Kennedy v. Collagen Corp.,* 161 F.3d 1226 (9th Cir.1998) for the proposition that testimony of a temporal relationship between exposure and onset of symptoms is reliable causation evidence. The court in *Kennedy,* however, relied not only on the expert's testimony of a temporal relationship, but stated the expert in that case relied on "(1) peer-reviewed articles; (2) clinical trials and product studies conducted by the defendant; (3) the Texas Department of Health's investigation; (4) his examination of Mrs. Kennedy; (5) Mrs. Kennedy's medical history; (6) Mrs. Ken-nedy's medical laboratory tests; and (7) Mrs. Kennedy's medical reports." *Kennedy,* 161 F.3d at 1228.

Here, Dr. Lechin did not rule out other potential causes for Praytor's illnesses, nor did he rely on peer-reviewed articles, clinical trials, health department investigations, or appellant's laboratory tests. For the above stated reasons, we hold that the trial court did not abuse its discretion if it concluded that Dr. Lechin's testimony does not present reliable evidence of causation.

■■■ In his affidavit, Bloch stated that the Ford air bag system "was unreasonably dangerous and was defective in that there was a release of toxic materials, primarily sodium azide and hydrazoic acid gas and sodium hydroxide, that were the likely proximate cause of the respiratory injuries to Rachael Praytor." In forming his opinion, Bloch relied on a description of the air bag system, the air bag inflator process and chemicals, information provided by Ford, and the nature of the injuries incurred by Praytor. Bloch relied on a publication by the National Research Council of the National Academy of Sciences, which stated: "The acute toxicity of sodium azide is high. Symptoms of exposure include lowered blood pressure, headache, hypothermia, and in the case of serious overexposure, convulsions and death. Ingestion of 100 to 200 mg in humans may result in headaches, respiratory distress, and diarrhea."

Reviewing the *Robinson* factors, we find Bloch's theory has not been tested, nor subjected to peer review. Further, there is no indication that Bloch's technique has been generally accepted as valid by the relevant scientific community.

Praytor contends Bloch's opinion is reliable because there is no analytical gap in his logic. *See Gammill,* 972 S.W.2d at 726. To the contrary, Bloch recites a

study that shows injuries may occur at exposure levels of 100 to 200 milligrams of sodium azide. He then comes to the conclusion that because Praytor exhibited symptoms of respiratory illness following an alleged exposure to less than .0006 milligrams of sodium azide, the exposure caused her symptoms. Bloch's conclusion is not supported by verifiable data. Also, Dr. Lechin did not provide evidence regarding the degree of exposure, which, in reasonable medical probability would be injurious.

Praytor further contends Bloch's opinion is reliable because it is based on a physician's opinion that chemicals from the air bag caused the symptoms. In Bloch's affidavit, there is a statement from Dr. Bradford Patt, one of Praytor's treating physicians. Dr. Patt stated that Praytor had been healthy prior to the accident; however, she experienced severe blockage of her sinuses after the accident. Dr. Patt further stated:

> It would be hard to know whether an air bag exposure to chemicals would be the cause, or should I say that it would be difficult to document this. However, in an otherwise healthy patient, which Rachael reportedly was before this event, the most likely cause is an aspiration of some type into her sinuses and lungs of the chemical at the time of the accident.

Dr. Patt's opinion is similar to the opinion expressed by Dr. Lechin. It is based on temporal proximity of symptoms to the air bag explosion. For the reasons mentioned above, we hold the trial court did not abuse its discretion if it concluded that Dr. Patt's opinion is not reliable.

### Conclusion

We recognize that a no evidence motion for summary judgment presents potential pitfalls for non-movants when the issue is reliability of expert testimony. A non-movant responding to a no-evidence motion for summary judgment may request a continuance of the summary judgment proceeding in order to submit additional evidence. The non-movant may also request a *Robinson–Daubert* hearing in order to overcome the reliability challenge. *See* Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas,* 34 Hous. L.Rev. 1303, 1348 (1998). We do not have the benefit of a record reflecting the basis for the trial court's ruling on the qualifications and methodology of Praytor's experts prior to the summary judgment hearing. Consequently, we must review admissibility of the experts' opinions based solely on the summary judgment evidence.

Under this record, we hold that the trial court did not abuse its discretion if it concluded that Praytor's experts are not qualified and their opinions are not reliable. Because Praytor relied on evidence that is barred from consideration by the rules of evidence, the trial court did not err in granting summary judgment. The judgment of the trial court is affirmed.