Opinion issued May 3, 2007






 







In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00553-CV






MICHAEL DAVID BOWLER, Appellant


V.


METROPOLITAN TRANSIT AUTHORITY 

OF HARRIS COUNTY, TEXAS, Appellee






On Appeal from the 127th District Court 

Harris County, Texas

Trial Court Cause No. 2005-45221






MEMORANDUM OPINION


 In this no answer-default judgment case, the trial court awarded appellee,
Metropolitan Transit Authority Of Harris County, Texas ("Metro"), $49,108.85 in
damages, plus pre-judgment interest and costs, against appellant, Michael David
Bowler. On appeal, Bowler contends that Metro presented legally insufficient
evidence to support the damages awarded. (1)

 We affirm.

Background


 Metro filed suit against Bowler. Metro alleged that, while he was driving,
Bowler struck a bus driven by Metro employee, Natalie Haughton. Metro claimed
that, as a result of Bowler's negligence, Haughton "suffered serious injuries and
suffered other damages, . . . including substantial medical expenses and loss of
income." Metro alleged that, as a result of the accident, it paid workers'
compensation benefits to Haughton. Metro asserted that, by statute, it was subrogated
to the rights of Haughton for any benefits it had paid to her. On that basis, Metro
claimed that Bowler was "responsible for [Metro's] losses in the form of its payment
of benefits for or to [Haughton]." 

 After Bowler did not answer the suit, Metro filed a motion for default
judgment. Metro attached two affidavits, each signed by its custodian of records, E.
Gail Mitchell, who stated in each affidavit that she was "personally acquainted with
the facts." Mitchell testified that Metro had paid $15,813.24 in medical bills on
behalf of Haughton "resulting from the collision made the basis of this lawsuit" and
$34,922.74 in lost wages to Haughton "as a result of injuries she sustained in the
collision made the basis of this lawsuit." Metro also offered its authenticated
business records itemizing the medical expenses and lost income benefits it had paid. 
 The trial court granted the motion and signed an interlocutory default
judgment. The court later held a damages hearing at which Metro submitted further
evidence supporting the damages it sought. Metro offered 16 affidavits from each of
the medical providers that had supplied services to Haughton. The affiant in each
affidavit testified that the medical services provided to Haughton were reasonable and
necessary. Each affidavit also reflected the sum charged by that provider for the
medical services it supplied to Haughton. Metro also offered another authenticated
Metro business record, a printout of a computer screen, showing the sums that Metro
had paid related to the accident. 

 At the end of the hearing, the trial court signed a "Final Judgment" ordering
that Metro recover $49,108.85 in damages and $7,966.38 in pre-judgment interest
from Bowler. 

Legal Sufficiency Challenge


 On appeal, Bowler asserts that Metro's evidence was legally insufficient to
support the trial court's award of damages. 

A. Standard of Review and General Principles Governing Default Judgments

 When a default judgment on an unliquidated claim is entered, all factual
allegations set forth in the petition are deemed admitted except for the amount of
damages. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992). Before
awarding unliquidated damages in a default judgment, a trial court must hear
evidence of those damages. Tex. R. Civ. P. 243; Heine, 835 S.W.2d at 83. A plaintiff
in a default judgment must prove a "causal nexus" between the event made the basis
of the suit and the plaintiff's injuries. Morgan v. Compugraphic Corp., 675 S.W.2d
729, 732 (Tex. 1984). "Proving that the event sued upon caused the plaintiff's
alleged injuries is part and parcel of proving the amount of damages to which the
plaintiff is entitled." Id. 

 If no findings of fact or conclusions of law are filed or requested in a bench
trial, we will assume that the trial court made all findings necessary to support its
judgment, but when a reporter's record is made part of the record, these implied
findings may be challenged for factual or legal sufficiency. Heine, 835 S.W.2d at
83-84. This Court may sustain a legal sufficiency, or no evidence point, only if the
record reveals one of the following: (1) there is a complete absence of a vital fact; (2)
the court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is
no more than a scintilla; or (4) the evidence conclusively proved the opposite of the
vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005).

B. Medical Expenses

 Bowler first contends that Metro presented legally insufficient evidence to
show a causal link between the accident underlying the suit and the medical expenses
claimed by Metro. Specifically, Bowler bases this challenge on the following: (1)
Metro did not show that Haughton was in good health before the accident; (2) Metro
offered no medical expert testimony to support causation; and (3) the affidavits
offered to support the medical expenses do not address the issue of causation. We
disagree with each of Bowler's specific contentions.

 In Jackson v. Gutierrez, the Fourteenth Court of Appels addressed, in the
context of a no-answer default judgment, whether a causal nexus can be established
between the accident and the damages without evidence that the plaintiff was in good
health prior to the accident. 77 S.W.3d 898, 902 (Tex. App.--Houston [14th Dist.]
2002, no pet.). There, the plaintiff testified that her damages had all occurred "as a
result of the accident." Id. The Jackson court held that such testimony was alone
sufficient to show a causal nexus without showing proof of the plaintiff's good health
prior to the accident. See id. Similarly, in this case, Metro presented affidavit
testimony that Metro paid, on behalf of Haughton, $15,813.24 in medical bills
"resulting from the collision made the basis of the lawsuit." Thus, no proof of
Haughton's prior good health was required. See id.

 Bowler also contends that Metro was required to submit medical expert
testimony to support causation. In Morgan, a default judgment case, the Supreme
Court of Texas wrote, "Lay testimony is adequate to prove causation in those cases
in which general experience and common sense will enable a layman to determine,
with reasonable probability, the causal relationship between the event and the
condition." 675 S.W.2d at 733. In contrast, other courts addressing this issue have
concluded that expert medical testimony is required when the record identifies more
than one cause of the plaintiff's injuries because "[g]eneral experience and common
sense simply do not enable a fair understanding of causation under these
circumstances; accordingly, expert testimony is required." Praytor v. Ford Motor
Co., 97 S.W.3d 237, 241 (Tex. App.--Houston [14th Dist.] 2002, no pet.); accord
Coastal Tankships, U.S.A., Inc. v. Anderson, 87 S.W.3d 591, 603 (Tex.
App.--Houston [1st Dist.] 2002, pet. denied). But, when the record identifies only
one cause of the plaintiff's injuries, medical expert testimony is not required. See
Byrd v. Delasancha, 195 S.W.3d 834, 839 (Tex. App.--Dallas 2006, no pet.). Here,
the record does not reveal or suggest more than one cause of Haughton's injuries;
rather, the accident is the only identified cause. Thus, medical expert testimony was
not required to show a causal nexus in this case. See id.

 Bowler also contends that the affidavits offered by Metro did not address
causation. As mentioned, Mitchell's affidavit expressly stated that Metro paid, on
behalf of Haughton, $15,813.24 in medical bills "resulting from the collision made
the basis of the lawsuit." Other courts have held, in the context of no-answer default
judgments, that testimony indicating that a plaintiff's damages resulted from the event
made the basis of the suit was alone legally sufficient evidence to establish a causal
link. See Jackson, 77 S.W.3d at 902 (concluding that testimony that damages had all
occurred "as a result of the accident" was alone sufficient to show a causal nexus);
see also Warren v. Zamarron, No. 03-03-00620-CV, 2005 WL 1038822, at *5 (Tex.
App.--Austin May 5, 2005, no pet.) (mem. op.) (holding that testimony that plaintiff
sustained certain physical injuries "as a result of" the accident caused by defendant
was sufficient to establish causal nexus); Transport Concepts, Inc. v. Reeves, 748
S.W.2d 302, 305 (Tex. App.--Dallas 1988, no writ) (same). Likewise, we conclude
that Mitchell's "resulting from" testimony is legally sufficient evidence to show a
causal nexus between the accident underlying the suit and the medical expenses paid
by Metro on behalf of Haughton. 

C. Lost Wages

 Bowler also contends that Metro presented legally insufficient evidence to
show a causal nexus between the accident and Haughton's lost wages paid by Metro. 
Metro offered an affidavit signed by Mitchell in which Mitchell testified that "Metro
paid $34,922.74 in lost wages (temporary income benefits) to employee Natalie
Haughton incurred as a result of injuries she sustained in the collision made the basis
of this lawsuit for time missed from September 8, 2003 to October 17, 2005." We
conclude that this testimony was sufficient to show a causal nexus between the
accident and Haughton's lost wages. See Jackson, 77 S.W.3d at 902 (holding that
testimony that plaintiff "lost wages" "as a result of the accident" was sufficient to
satisfy causal nexus requirement). 

 Bowler also challenges Metro's proof underlying the damages regarding lost
wages. Bowler asserts that "the correct measure of damages in a personal injury case
is loss of earning capacity and not lost wages." We observe that other courts have
considered lost wages to be evidence of loss of earning capacity. See McIver v.
Gloria, 169 S.W.2d 710, 712 (Tex. 1943) (describing lost wages as a measure of lost
earning capacity); City of San Antonio v. Vela, 762 S.W.2d 314, 320 (Tex. App.--San
Antonio 1988, writ denied) (holding that testimony regarding lost wages was legally
sufficient to support damages for past lost earning capacity). Thus, assuming that
Bowler is correct regarding the proper measure of damages, Metro's evidence of lost
wages was legally sufficient evidence to support past lost earning capacity. See Vela,
762 S.W.2d at 320. 

 Bowler also contends that "there must be some proof that the injured party had
some capacity to earn money before the injury and the injury resulted in some
impairment to the injured party's ability to work." (Emphasis added.) Here, the
evidence submitted to the trial court showed that, (1) on the date of the accident, July
16, 2003, Haughton was a Metro employee, who was operating a bus; (2) Metro paid
workers' compensation medical benefits to Haughton as a result of the accident; (3)
Metro paid lost wages "to employee Haughton incurred as a result of injuries she
sustained in the collision made the basis of the lawsuit for the time missed from
September 8, 2004 to October 17, 2005." We conclude that the evidence submitted
to the trial court was legally sufficient to show that Haughton had "some capacity to
earn money before the injury and that the injury resulted in some impairment to [her]
ability to work."

 Lastly, Bowler contends that Metro's supporting business records show that
"not all of [Metro's] payments were for lost wages." Bowler points out that, for
example, the business records reflect that Metro paid an attorney to represent
Haughton in the workers' compensation proceeding and asserts that such attorney's
fees are not recoverable from Bowler. Here, the record reflects that Metro sought to
recover only the lost wage benefits paid to Haughton and no other sums paid, though
other sums may be reflected in its business records. That is, Metro made clear that
it was seeking only "$34,922.74 in lost wages (temporary income benefits)" paid to
Haughton. Metro sought no other sums, including the attorney's fees itemized in its
business records.

 We overrule Bowler's sole issue.

Conclusion


 We affirm the judgment of the trial court.





 Laura Carter Higley

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.
1. Bowler filed this as a restricted appeal. However, on July 3, 2006, this Court granted
Bowler's motion to extend time to file his notice of appeal. Therefore, we treat this
as an ordinary appeal, rather than a restricted appeal. For this reason, we do not
review Bowler's no-evidence complaint in terms of "error on the face of record," as
we do in restricted appeals. Thus, to the extent that Bowler raised "error on the face
of the record" as a separate issue, it is overruled as moot.