**Motion for Rehearing Overruled; Majority Opinion and Concurring and Dissenting Opinion of February 2, 2012 Withdrawn; Affirmed in Part and Reversed and Remanded in Part; Substitute Majority Opinion and Substitute Concurring and Dissenting Opinion filed March 1, 2012.**



**In The**

# Fourteenth Court of Appeals

———————————

**NO. 14-10-00505-CV**

———————————

**NICOLAS BARZOUKAS, Appellant**

**V.**

**FOUNDATION DESIGN, LTD. AND LARRY SMITH, Appellees**

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2007-39932**

## SUBSTITUTE MAJORITY OPINION

We overrule the motion for rehearing, withdraw our opinion dated February 2, 2012, and issue the following substitute opinion.

Nicolas Barzoukas sued Foundation Design, Ltd. and engineer Larry Smith for damages in connection with alleged defects in the foundation of Barzoukas's house. The trial court granted a no-evidence summary judgment on all claims asserted against Foundation Design and Smith. We affirm in part and reverse and remand in part.

BACKGROUND

Heights Development, Ltd. contracted with Barzoukas in September 2005 to build a house for him. Barzoukas sued Heights Development, Foundation Design, Smith, and numerous other defendants who participated in the construction of his house, contending that it is riddled with problems. Smith is the engineer of record for the house's foundation design.

The plans and specifications originally called for 15-foot piers to support the foundation. After construction began, Smith signed a letter addressed to Heights Development changing the plans and specifications to allow for 12-foot piers — supposedly because "hard clay stone was encountered" while drilling holes for the piers. Barzoukas says the given justification for shallower piers was false and Smith knew or should have known it was false. According to Barzoukas, general contractor Heights Development used this letter to persuade the City of Houston to allow continuation of construction after an inspector initially rejected the foundation because the piers were too shallow. Barzoukas asserts that the city has never approved the house's foundation. Barzoukas's expert engineer opines that Smith violated the professional standard of care by approving the pier depth change.

Expert reports indicate that the piers are deficient because they are too shallow; they are not located properly under the house; they are crooked; and they do not make proper contact with the framing I-beams used to support the house. The estimated cost of repairing the foundation by adding ten new piers is $25,000.

Barzoukas eventually settled with all defendants except for Foundation Design, Smith, and another defendant who filed for bankruptcy. As to Foundation Design and Smith, Barzoukas asserted claims for negligence, negligent misrepresentation, fraud,

fraudulent inducement, conspiracy, and exemplary damages in connection with the foundation.

Foundation Design and Smith filed a no-evidence motion for summary judgment on all claims asserted against them. The trial court granted the motion without specifying the basis for its ruling. The court later granted Barzoukas's motion to sever his claims against Foundation Design and Smith. Barzoukas now appeals and contends that summary judgment is not warranted.

## STANDARD OF REVIEW

In a no-evidence motion for summary judgment, the movant must specifically identify the elements for which there is no evidence. *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 473–74 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The trial court must grant the motion unless the respondent presents evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i). However, the respondent is "'not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements.'" *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (quoting Tex. R. Civ. P. 166a(i) cmt. (1997)).

We review a summary judgment *de novo* and must take as true all evidence favorable to the nonmovant and draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Mendoza v. Fiesta Mart, Inc.,* 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). When a trial court does not specify the grounds for granting summary judgment, we must affirm the judgment if any summary judgment ground is meritorious. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

3

In a single issue, Barzoukas contends that the trial court erred by granting summary judgment in favor of Foundation Design and Smith.

The parties' appellate briefing focuses primarily on whether Barzoukas's negligence and negligent misrepresentation claims are foreclosed under the economic loss rule. In addition to their reliance on the economic loss rule as a bar to recovery, Foundation Design and Smith contend that summary judgment is warranted because Barzoukas failed to proffer competent evidence establishing that their conduct proximately caused damages. Foundation Design and Smith also contend that Smith's letter does not give rise to viable claims for fraud and fraudulent inducement. We address these contentions in turn.[1]

## I. Economic Loss Rule

### A. Overview

Applying the economic loss rule in this case presents two challenges.

The first challenge arises because the economic loss rule's legal boundaries are not entirely settled.

The second challenge arises because the relevant summary judgment pleadings in this record include neither (1) the contract between homeowner Barzoukas and general

---

[1] Barzoukas does not challenge the portion of the trial court's judgment pertaining to his claims for conspiracy and exemplary damages. Thus, we affirm the judgment to the extent it pertains to those claims.

4

contractor Heights Development; nor (2) the purported subcontract between Heights Development and engineer Smith — or, possibly, between Heights Development and Foundation Design or some other entity related in some way to Smith. A portion of what appears to be the Barzoukas-Heights Development contract appears elsewhere in the record.[2] But even if we were to consider evidence outside of the summary judgment pleadings related to Foundation Design and Smith, little is gained because this portion of the contract is incomplete. The purported subcontract is entirely missing. These gaps make it more difficult to evaluate application of the economic loss rule.

The difficulty is compounded by an awkward procedural posture. This case presents as an appeal from an order granting a no-evidence motion for summary judgment. Texas Rule of Civil Procedure 166a(i) authorizes summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). Such a motion "must state the elements as to which there is no evidence" and the trial court must grant the motion "unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id*.

---

[2] A portion of a "New Home Contract" identifying Heights Development as the "Seller" and Barzoukas as the "Buyer" was attached to Plaintiff's Response to Heights Defendants' Motion for Summary Judgment as to the Measure of Damages. This is identified as a form contract "Promulgated By The Texas Real Estate Commission" and bears the name "Karen Derr & Associates Realty" across the top. This copy is not signed by Barzoukas or a representative of Heights Development, although it appears to have Barzoukas's initials at the bottom of pages one through seven. Paragraph 7.B. of this document is entitled "Construction Documents" and states: "Seller shall complete all improvements to the Property with due diligence in accordance with the Construction Documents." In turn, the "Construction Documents" are defined to include plans, specifications, and change orders; the document recites that the "Construction Documents have been signed by the parties and are incorporated into this contract by reference." The "Construction Documents" themselves do not appear in the record.

5

Significant hammering and bending is required to fit the appellate argument of Foundation Design and Smith — which invokes the economic loss rule in asserting that "as a matter of law no cause of action for negligence or negligent representation runs in favor of appellant with respect to appellees as subcontractors" — within Rule 166a(i). Determining whether "the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion" is an inquiry under Rule 166a(c)'s traditional summary judgment standard, with its attendant burdens on the movant. *See* Tex. R. Civ. P. 166a(c); *see also KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

Proper placement of the summary judgment burden helps to determine how gaps in evidence regarding the Barzoukas-Heights Development contract and the purported subcontract affect the analysis on appeal. But no argument regarding the operative summary judgment standard has been raised in the trial court or on appeal. Therefore, despite an imperfect fit between the arguments on appeal and the summary judgment mechanism the appellees invoked in the trial court, the economic loss rule's applicability in this case must be analyzed in "no evidence" terms under Rule 166a(i).

Although areas of uncertainty exist under case law addressing the economic loss rule in Texas, at least one thing is clear: Details matter.

It matters who contracted with whom to do what. It matters what the contracts say; what they cover; and what they do not cover. It matters what kind of damages are requested. It matters whether the requested damages are attributed to activities covered by the contracts. It matters whether and how multiple parties in a chain of contracts allocated among themselves the risk that participants in the chain would perform deficiently, along with the obligation to pay for deficient performance. It matters what kinds of claims are asserted and against whom they are asserted.

The details are largely missing here. The parties agree that a contract existed between Barzoukas and Heights Development regarding the construction of Barzoukas's house. They agree that a subcontract existed in relation to the house's foundation. They also agree that Heights Development was a party to the purported subcontract, and Barzoukas was not. Much of the rest is guesswork.

This is the backdrop against which we must analyze the economic loss rule's potential applicability when Barzoukas attempts to sue an engineer for professional negligence and negligent misrepresentation in connection with foundation problems in the house Heights Development contracted to build for him. Barzoukas does not contend that the original plans and specifications calling for 15-foot piers are deficient. Instead, his claims rest on a letter signed by Smith after construction was underway; this letter is characterized as "an addendum to the plans and specifications" by which Smith approved reducing the foundation's pier depth from 15 feet to 12 feet.

Determining whether the economic loss rule applies here to foreclose Barzoukas's negligence and negligent misrepresentation claims against Foundation Design and Smith involves a two-step analysis focusing on (1) identifying the governing legal standards, and (2) applying those standards to the record in this case. We now turn to this analysis.

### B. Legal Standards Governing the Economic Loss Rule in Texas

The Texas Supreme Court's most recent discussion of the economic loss rule appears in *Sharyland Water Supply Corp. v. City of Alton*, No. 09-0223, 2011 WL 5042023 (Tex. Oct. 21, 2011).

In broad terms, this doctrine addresses efforts to use negligence and product liability claims as vehicles for recovery of economic losses. *See id.* at *5-*7. *Sharyland*

7

emphasizes that shorthand references to "the" economic loss rule in the singular can be "something of a misnomer" because this term actually encompasses multiple concepts addressing efforts to recover particular economic losses in particular situations. *Id*. at *5.

*Sharyland* goes on to describe the circumstances under which application of the economic loss rule is settled under Texas law, and those under which it is unsettled. *Id*. at *6-*9.

- The economic loss rule forecloses strict liability claims based on a defective product that damages only itself but not other property. *Id*. at *6 (citing *Signal Oil & Gas Co. v. Universal Oil Prods*., 572 S.W.2d 320, 325-26 (Tex. 1978); *Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Serv., Inc.*, 572 S.W.2d 308, 312-13 (Tex. 1978); and *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 81-2 (Tex. 1977)).

- The economic loss rule also forecloses a negligence claim predicated on a duty created under a contract to which the plaintiff is a party when tort damages are sought for an injury consisting only of economic loss to the subject of the contract. *Sharyland*, 2011 WL 5042023 at *7 (citing *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex. 1991); and *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

- In these two contexts, economic losses are more appropriately addressed through statutory warranty actions or common law breach of contract suits instead of tort claims. *Sharyland*, 2011 WL 5042023 at *7.

- "We . . . declined to extend *DeLanney* to a fraudulent inducement claim, even when the claimant suffered only economic losses to the subject of a contract."

8

*Id.* (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)).

- The economic loss rule "'applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself.'" *Sharyland*, 2011 WL 5042023 at *7 (quoting *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007)).

- The economic loss rule applies in some circumstances involving parties who are not in privity — such as those involving a remote manufacturer and a consumer in the defective product context. *Sharyland*, 2011 WL 5042023 at *7.

- "[W]e have never held that [the economic loss rule] . . . precludes recovery completely between contractual strangers in a case not involving a defective product . . . ." *Id.*

- The supreme court rejects a formulation of the economic loss rule that "says you can never recover economic damages for a tort claim." *Id*. at *8.

- The economic loss rule is not a general rule of tort law; instead, it is a rule in negligence and strict product liability cases. *Id*.

- Merely because the object of the negligent performance "was the subject of a contract does not mean that a contractual stranger is necessarily barred from suing a contracting party for breach of an independent duty." *Id*. "If that were the case, a party could avoid tort liability to the world simply by entering into a contract with one party." *Id*.

9

- "The economic loss rule does not swallow all claims between contractual and commercial strangers." *Id*.

- The supreme court has not yet decided "whether purely economic losses may ever be recovered in negligence or strict liability cases." *Id*.

Based on these precepts, the supreme court rejected reliance on the economic loss rule to foreclose Sharyland's claim against a plumbing contractor alleged to have damaged Sharyland's water system by negligently installing an adjacent sewer system under a separate contract to which Sharyland was not a party. *Id*. at \*9.

Neither Sharyland's Water Supply Agreement with the city nor the city's separate contract with a plumbing contractor defeated Sharyland's negligence claim against the plumbing contractor. Sharyland asserted this negligence claim against the contractor seeking to recover the cost of relocating or encasing its water lines to prevent contamination from the improperly installed sewer lines. *Id*. Based in part on the existence of these damages, the supreme court concluded as follows: "We disagree that the economic loss rule bars Sharyland's recovery in this case." *Id*.

In so holding, the supreme court disclaimed any intent to address circumstances in construction cases involving "parties in a contractual chain who have had the opportunity to allocate risk, unlike the situation faced by Sharyland." *Id*. "While it is impossible to analyze all the situations in which an economic loss rule may apply, it does not govern here." *Id*. "The rule cannot apply to parties without even remote contractual privity, merely because one of those parties had a construction contract with a third party, and when the contracting party causes a loss unrelated to its contract." *Id*.

With the partial guidance provided in *Sharyland*, this court must determine whether to accept Foundation Design's and Smith's invitation and hold that the economic loss rule forecloses Barzoukas's negligence and negligent misrepresentation claims predicated on the letter signed by Smith.

### C.    Applying the Economic Loss Rule

Foundation Design and Smith assert that "economic losses alleged by homeowners falling within the subject matter of their contract with the homebuilder preclude tort claims, including negligence and negligent misrepresentation, against subcontractors under the economic loss doctrine." They rely heavily on *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84 (Tex. App.—Houston [1st Dist.] 2007, pet. denied), to support this proposition.

Foundation Design and Smith also contend that Barzoukas's negligence and negligent misrepresentation claims involve parties in a contractual chain who already have allocated the risk of deficient performance. They assert that applying the economic loss rule here is necessary to preserve the agreed-upon risk allocations among the parties who built Barzoukas's house.

The arguments proffered by Foundation Design and Smith fail for two reasons.

First, Foundation Design and Smith misplace their reliance on *Pugh*. That case addressed claims for negligence, strict liability, and breach of implied warranties brought by homeowners against General Terrazzo, the manufacturer of an "exterior insulated finishing system" used in constructing their house. *Pugh*, 243 S.W.3d at 86-7. The homeowners alleged that General Terrazzo's exterior finishing product was defective because it allowed moisture penetration that damaged the house's frame and interior. *Id.*

11

*Pugh* addressed only claims asserted against the product manufacturer. The homeowners dismissed their claims against the masonry subcontractor who applied the exterior finish manufactured by General Terrazzo. *Id*. at 87 n.2. They obtained a default judgment against the general contractor. *Id*. Neither the general contractor nor the masonry subcontractor was a party to the appeal. *Id*.

As this procedural history makes clear, *Pugh* applied existing economic loss rule principles governing negligence and strict liability claims by consumers against the remote manufacturer of a defective product. *Id.* at 90-95*; see also Sharyland Water Supply Corp.*, 2011 WL 5042023 at *6-*7. *Pugh* did not analyze the viability of claims asserted against a general contractor or a subcontractor. *Pugh*, 243 S.W.3d at 87 n.2 & 90-95. *Pugh* concluded that the economic loss rule foreclosed the homeowners' negligence and strict liability claims against product manufacturer General Terrazzo — even in the absence of privity between them — because "there was no personal injury or damage to other property that would have permitted the Pughs to assert a tort claim that would be excepted from the economic loss doctrine." *Id*. at 94 (citing *Am. Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 145 (5th Cir. 1995), *Hininger v. Case Corp.*, 23 F.3d 124, 127 (5th Cir. 1994), and *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex. App.—Dallas 2003, no pet.)).

In contrast to *Pugh*, Barzoukas does not aim his negligence and negligent misrepresentation claims at the remote manufacturer of an allegedly defective product. Barzoukas's claims involve Smith's asserted professional negligence in connection with approval of foundation piers that are shorter than the depth called for by the original plans and specifications. Thus, we must address a different question that was left open in *Sharyland* by addressing whether — in the particular home construction circumstances presented here — the economic loss rule "precludes recovery completely between

12

contractual strangers in a case not involving a defective product . . . ." *See Sharyland Water Supply Corp.*, 2011 WL 5042023 at *6-7. *Pugh* does not answer this question.

Second, Foundation Design's and Smith's arguments fail because they rely on unwarranted assumptions. Foundation Design and Smith assume the existence of (1) a contractual chain that begins with Barzoukas and ends with Smith; and (2) risk allocations within this chain that need protection from the disruptive effects of a freestanding negligence claim by the homeowner against a subcontractor. Neither assumption is warranted on this record.

The first assumption is unwarranted because it is not clear who contracted with whom to do what. Heights Development contracted to build a house for Barzoukas. Smith is portrayed as a subcontractor, but his exact role is not clear on this record.

The most detailed evidence concerning Smith's role comes from the Affidavit of Kirby Meyer, P.E., who states: "Larry F. Smith, a Professional Engineer, State of Texas License #43095 is the engineer of record for the design of the foundation of this structure." The affidavit also states: "It's my understanding that Larry Smith may have done such work individually or under different entities." Plaintiff's Seventh Amended Petition filed on April 15, 2010 lists the following as defendants: Foundation Design, LTD d/b/a Larry Smith Engineering; Larry Smith Engineering a/k/a Larry Smith, PC, a Texas professional corporation; Larry Smith, PC, a Texas professional corporation; and Larry Smith individually. The letter itself is typed on letterhead reading "Larry Smith Engineering" and is signed by Larry F. Smith above a signature block that reads, "Larry F. Smith, P.E. Registered Professional Engineer." The letter does not reference "Foundation Design, Ltd."

13

This evidence falls short of establishing that Barzoukas's claims against Foundation Design and Smith are foreclosed "as a matter of law" because those claims are subsumed by a contractual chain in which the risk of Smith's deficient performance already has been addressed. We do not know from the four corners of the summary judgment pleadings how the Heights Development-Barzoukas contract addressed changes to plans and specifications once construction had begun. The existence, terms and scope of any subcontract involving the foundation design are unresolved on this record. So too is the identity of the parties to the purported subcontract. Also unresolved is whether the asserted subcontract encompasses Smith's post-design conduct in approving a change in pier depth after construction was underway.

The second assumption is unwarranted as well. Perhaps Smith or an entity related to him agreed to indemnify Heights Development for damages arising from Smith's negligent performance of foundation-related engineering activities. Perhaps not. Perhaps other risk allocation mechanisms exist. Perhaps not. At this juncture, any discussion of risk allocation among entities involved in the construction of Barzoukas's house is speculation based on a threadbare record.

Mindful that this case comes to us as an appeal from an order granting a no-evidence summary judgment under Rule 166a(i), we conclude that reversal is warranted because Meyer's affidavit and Smith's letter raise material fact issues with respect to the mechanism for and effect of design changes during construction under the Heights Development-Barzoukas contract; the identities of the parties to any subcontract concerning the foundation; the scope of work to be performed under such a subcontract; whether the piers are 12 feet deep; whether Smith's approval of changing the pier depth from 15 feet to 12 feet was within the scope of any subcontract concerning the foundation; and whether changing the pier depth caused a loss unrelated to a subcontract covering

14

foundation plans and specifications. *See Sharyland Water Supply Corp.*, 2011 WL 5042023 at \*9 ("The [economic loss] rule cannot apply to parties without even remote contractual privity, merely because one of those parties had a construction contract with a third party, and when the contracting party causes a loss unrelated to its contract."); *see also Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 495 (Tex. App.—Texarkana 2002, pet. denied) ("[T]he injury Goose Creek alleged, the invasion of sewage and sewer gas into the school buildings, constitutes an injury to property that was not the subject matter of the contract, that portion of the contract Goose Creek had with Lewis for which Lewis contracted with Jarrar's Plumbing, namely the plumbing."); *Thomson v. Espey Huston & Assocs., Inc*., 899 S.W.2d 415, 421-22 (Tex. App.—Austin 1995, no writ) ("In contrast, Espey's alleged negligence in performing the Scope of Services Contract may give rise to a tort cause of action. Thomson alleges that Espey's negligence in designing the drainage system and testing soil quality has caused damage to other parts of the apartment complex.").

Pointing to the existence of a contract between Heights Development and Barzoukas, or to the existence of a subcontract, is the beginning of the analysis — not the end.

*Sharyland* demonstrates that the mere presence of contracts in the general vicinity of a construction dispute does not justify indiscriminate invocation of the economic loss rule. *See Sharyland Water Supply Corp.*, 2011 WL 5042023 at \*8-\*9. The economic loss rule's reach depends on specific circumstances. *See id.* These circumstances may include risk allocations in a chain of contracts that affect whether negligence claims seeking particular damages against particular parties are viable in connection with a construction dispute in particular circumstances. *See id*. at \*9. No such allocations have been identified here.

15

On this record, Foundation Design and Smith cannot obtain summary judgment on grounds that the economic loss rule forecloses Barzoukas's negligence and negligent misrepresentation claims against them "as a matter of law."

## II.     Causation and Damages

As alternative grounds for affirmance, Foundation Design and Smith argue that summary judgment on negligence and negligent misrepresentation is warranted because Barzoukas failed to proffer competent evidence establishing causation and damages in connection with the foundation.

Foundation Design and Smith contend on appeal that Barzoukas failed to proffer competent evidence because (1) the report of his damages expert Richard Roy was not properly authenticated; (2) Roy relies in part on another report, which also is not authenticated; (3) Barzoukas failed to supplement his responses to another defendant's requests for disclosures under Texas Rule of Civil Procedure 194 to identify the amount and method of calculating economic damages; (4) Roy's opinion is unreliable because his qualifications to proffer expert damages testimony are not established as required under Texas Rule of Evidence 702; and (5) Roy's $25,000 estimate for repairing the foundation is conclusory because he fails to allocate that amount among repairs required to address the short piers referenced in Smith's letter and other foundation problems that are not attributed to Smith.

Foundation Design and Smith objected to Barzoukas's evidence on these grounds in the trial court. These objections are contained in "Defendants Foundation Design, Ltd. d/b/a Larry Smith Engineering and Larry Smith's Reply to Plaintiff's Response to Defendants' No Evidence Motion for Summary Judgment" filed on May 4, 2010. The

16

record contains no indication that the trial court ruled on these objections. The summary judgment order itself does not address evidentiary objections.

We do not presume that an order granting summary judgment also overrules objections to summary judgment evidence. *Seidner v. Citibank (S.D.) N.A.*, 201 S.W.3d 332, 335 n.2 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The absence of a ruling on objections (1) and (2) regarding authentication forecloses consideration of those challenges on appeal. *Commint Technical Servs., Inc. v. Quickel*, 314 S.W.3d 646, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (absence of ruling on objection to form challenging propriety of authentication forecloses consideration on appeal) (citing *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). Even assuming for argument's sake that Foundation Design and Smith validly can invoke Barzoukas's asserted failure to answer another defendant's discovery inquiry as a basis for objecting, the absence of a ruling likewise forecloses consideration of objection (3). An express ruling also is required on objections that an expert opinion is unreliable. *See Pink v. Goodyear Tire & Rubber Co.*, 324 S.W.3d 290, 301 (Tex. App.—Beaumont 2010, pet. dism'd).[3]

---

[3] Appellees contend on rehearing that this holding with respect to objections to the reliability of an expert opinion conflicts with *Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 242 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We disagree because the circumstances in *Praytor* are distinguishable. The trial court granted summary judgment after Ford filed a no-evidence motion for summary judgment on grounds that Praytor lacked evidence of a causal link between her respiratory problems and the deployment of an air bag in her car during an accident. *Id*. at 240. Praytor responded by attaching affidavits from two experts. *Id.* Ford objected to the affidavits under Texas Rule of Evidence 702. The trial court granted summary judgment in favor of Ford and expressly stated, "Plaintiff has not produced legally competent evidence regarding causation, an essential element of her case." *Id*. This court stated as follows on appeal: "The trial court, in holding that Praytor had failed to present 'legally competent evidence,' effectively concluded that the expert testimony was either inadmissible or insufficient."

In contrast to the circumstances listed above, an objection that expert testimony is too conclusory to support or defeat summary judgment is not waived by the failure to obtain a ruling in the trial court. *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 457 n.6 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997)). "An expert opinion is considered conclusory if it is essentially a 'conclusion without any explanation.'" *Pink*, 324 S.W.3d at 296-97 (quoting *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d, 389 (Tex. 2008)).

Roy's report states that "[t]he damages in this case are primarily based upon the complaints made in the Givens Report dated April 20, 2007 and the construction defects that have been identified in the case records." The Givens Report states that "the off grade concrete pier and wood beams foundation is found to have experienced differential movement of concern as evident by the significant unevenness in the floor elevation." It also states that "[a] number of the concrete piers are tilted out of plumb to an excess amount." The Givens Report further states that "[t]ilting of foundation support piers can be caused by a number of conditions" including "inadequate consideration for the design of the piers . . . ."

Roy goes on to state as follows in his report:

---

*Id.* at 242. The circumstances here are distinguishable from *Praytor* because the summary judgment order at issue in this case contains no comparable statement expressly addressing the competency of expert evidence proffered to establish causation. The trial court's order in this case recites as follows: "After considering the moving and opposition papers, arguments of counsel, and all other matter presented to the Court, the Court is of the opinion that Defendant's Motion is MERITORIOUS and should, in all things, be GRANTED." In contrast to the express language at issue in *Praytor*, this recitation cannot be construed as an effective holding that the proffered expert testimony "was either inadmissible or insufficient." *See id.*

18

The foundation suffers from several factors. The first is the fact that several of the drilled piers are not intal[l]ed vertical as designed. Also the piers were drilled 12 feet deep instead of the 15 feet required by the design. Finally the framing I-beams placed above the drilled piers do not make proper contact with all of the piers because some of the piers are not located where they were designed to be.

I have estimated what it would cost to repair the foundation problems, if in fact the foundation can ever be brought up to its designed capacity. The repair would require the placement of approximately 10 new piers and the added frame work to connect the new piers to the existing foundation. I estimate that this work could be done for about $25,000.00

We reject Foundation Design's and Smith's contention that Roy's expert damage evidence is conclusory with respect to necessary foundation repairs. Roy's estimate adequately links the stated cost to the installation of additional piers to address differential movement attributed to interrelated foundation problems.

### III.     Fraud and Fraudulent Inducement

Barzoukas contends that the trial court erred by granting summary judgment on his fraud and fraudulent-inducement claims because he presented evidence raising a fact issue on each element of these claims.

When pursuing claims for fraud and fraudulent inducement, a plaintiff must establish that the defendant made a material misrepresentation. *See Amouri v. Sw. Toyota, Inc.*, 20 S.W.3d 165, 168 (Tex. App.—Texarkana 2000, pet. denied). Barzoukas's fraud claims are based on the allegation that, in a letter addressed to Heights Development, Smith misrepresented that hard clay stone impeded the piers from being set at the required 15-foot depth and intended for Barzoukas and the City of Houston to rely upon this misrepresentation.

The letter, which was addressed only to Heights Development, contains the following statements:

19

At your request, an engineer from our firm has reviewed the information provided regarding the pier drilling operations at the above referenced residence. A representative of your firm notified us that during the drilling operations, clay was encountered. The foundation design (see LSE Job Number 2005-1038) specifies the piers to be 12" in diameter, to extend 15 feet below grade and to be reinforced with one #5 bar. We were notified that hard clay stone was encountered at approximately 12'-0". Due to the presence of hard clay stone, the pier depth shallowed to 12'-0" with the reinforcement remaining at one #5 bar. This letter is to serve as an addendum to the plans and specifications with the changes noted above. If any pier holes cave, due to the presence of the clay, our office should be contacted for further recommendation.

We trust this is the information, which you require. If you have any questions regarding this, please feel free to contact us.

Barzoukas argues that Smith, as the foundation engineer for the project, was presenting the information in the letter as fact because he was authorizing a material reduction in pier depth. Barzoukas also contends that the letter was used by Heights Development to obtain city approval for the pier reduction.

Regardless of whether Smith intended that this letter would be submitted to the city, nothing in the letter supports an inference that Smith represented hard clay stone was discovered at twelve feet. Smith merely acknowledged that Heights Development made such a representation, and Smith approved a shallower pier depth based on this information. Barzoukas did not present evidence supporting an inference that Smith or Foundation Design made a purposeful misrepresentation. Accordingly, the trial court did not err by granting summary judgment in favor of Smith and Foundation Design on Barzoukas's fraud and fraudulent inducement claims. We overrule the portion of Barzoukas's sole issue as it pertains to his claims for fraud and fraudulent inducement.

## CONCLUSION

We affirm the trial court's summary judgment with respect to fraud, fraudulent inducement, conspiracy, and exemplary damages. We reverse the trial court's summary judgment with respect to negligence and negligent misrepresentation, and remand for proceedings consistent with this opinion.


/s/     William J. Boyce
            Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Boyce. (Seymore, J. concurring and dissenting).